## HOYT *against* GELSTON & SCHENCK.

THIS was an action of trespass, brought against *David Gelston*, collector, and *Peter A. Schenck*, surveyor, of the customs of the port of *New-York*, for seizing a vessel called the *American Eagle*, with her tackle, apparel, furniture, ballast, water, salted provisions, and ship bread, on the 10th of *July*, 1810. The declaration contained several counts, which it is unnecessary to state, and the plaintiff laid his damages at 200,000 dollars.

The defendants pleaded, 1. Not guilty.

2. That, before the 10th of *July*, 1810, to wit, on the 1st of *July*, the *American Eagle*, with her tackle, apparel, and furniture, was attempted to be fitted out and armed, and 500 tons of stone ballast, 100 hogsheads of water, &c., were procured for the equipment of the said vessel, and were then and there

A sentence of restitution, in the district court of the *United States*, of a vessel which had been seized by a collector, is conclusive evidence, in an action of trespass brought by the owner against the collector, that the seizure was illegal.

The parts of the island of *St. Domingo*, respectively under the government of *Petion* and *Christophe*, are not independent states, within the meaning of the act of congress of the 5th of *June*, 1794, and, therefore, it is not illegal to fit put a vessel for the purpose of assisting the one against the other.

on board of her, as part of her equipment, with intent that she should be employed in the service of a foreign state, to wit, of that part of the island of *St. Domingo* which was then under the government of *Petion*, to commit hostilities upon the subjects of another foreign state, with which the *United States* were then at peace, to wit, of that part of the island of *St. Domingo* which was then under the government of *Christophe*, contrary to the form of the statute in such case made and provided; and that, on the 6th of *July*, *James Madison*, president of the *United States*, at *Washington*, did direct the defendants to seize, as forfeited to the use of the *United States*, the said ship, &c.; and that, afterwards, on the 10th of *July*, in pursuance of such authority, they seized the said ship.

3. The third count stated, generally, that the *American Eagle* was intended to be employed in the service of some foreign state, to commit hostilities upon the subjects of another foreign state, with which the *United States* were then at peace; and that she was seized by the defendants, pursuant to the directions of the president.

The defendants subjoined a notice that they would give in evidence on the trial, that the *American Eagle*, on the 1st of *July*, 1810, was fitted out and armed with intent to be employed in the service of a foreign prince or state, to wit, of that part of the island of *St. Domingo* which was then under the government of *Petion*, to cruise and commit hostilities upon the subjects, citizens, and property of another foreign prince, or state, with which the *United States* were then at peace, to wit, of that part of the island of *St. Domingo* which was then under the government of *Christophe*. And, also, that the said ship was fitted out with intent to be employed in the service of some foreign prince, or state, to commit hostilities upon the subjects of some other foreign prince, or state, with which the *United States* were then at peace; and, also, that the defendants, as collector and surveyor of the customs, did, on the 10th of *July*, 1810, seize and detain the said ship.

The plaintiff took issue on the first plea, and demurred to the second and third pleas, and the defendants having joined in demurrer, judgment was given for the plaintiff.

The cause was tried on the general issue, at the *New-York* sittings, in *November*, 1815, before Mr. Justice *Spencer*.

The plaintiff gave in evidence, that the ship was, at the time of seizure, in the actual, full, and peaceable possession of the plaintiff; and that, on her acquittal in the district court, it was decreed that she should be restored to the plaintiff, the claimant. The proceedings of the district court of the *United States*, for the district of *New-York*, were also given in evidence; by which it appeared that the *American Eagle* had been libelled, on the ground that she had been fitted out with intent to be employed in the service of *Petion* against *Christophe;* that the plaintiff had filed an answer to the libel, and a claim to the vessel, in which he denied the truth of the allegations in the libel; that, in *April*, 1811, he made application to the district court to have the ship appraised, and delivered to him, on giving security for the appraised value; that the vessel was appraised at 35,000 dollars, and the appraisement filed, which was not excepted to; and that the sureties offered by the plaintiff, for the appraised value, were accepted by the court; that the cause was tried, the libel dismissed, and the ship decreed to be restored to the plaintiff; and that a certificate of reasonable cause for the seizure had been denied. The plaintiff also proved, that the value of the ship, at the time of seizure, was 100,000 dollars, and that the defendant, *Schenck*, seized and took possession of her by the written directions of *Gelston*. Here the plaintiff rested his cause; and the defendants moved for a nonsuit, which the judge overruled, and delivered his opinion, that the matters given in evidence, on the part of the plaintiff, were sufficient to entitle him to a verdict; to which opinion the defendants' counsel excepted. The plaintiff then proved the sale and delivery of the ship to himself.

The defendants offered to give in evidence, as a defence, or in mitigation of damages, that the vessel was fitted out to be employed in the service of that part of the island of *St. Domingo* which was then under the government of *Petion*, to cruize and commit hostilities upon the subjects, citizens, and property of that part of the island of *St. Domingo* which was then under the government of *Christophe*, contrary to the form of the statute in such case made and provided, for which cause the defendants seized her; but the judge overruled the evidence, on the ground that it was inadmissible as a justification; and that it was inadmissible in mitigation of damages, the plaintiff's counsel having admitted that the defendants had not been in-

fluenced by any malicious motives in making the seizure, and that they had not acted with any view or design of oppressing or injuring the plaintiff, who was thereby precluded from claiming damages, by way of punishment or smart money. The defendants excepted to the opinion of the judge, and the jury found a verdict for the plaintiff, for 107,369 dollars and 43 cents damages.

The bill of exceptions being returned, according to the directions of the statute, was argued by *Van Vechten*, and *H. Bleecker*, for the defendants; and *Colden*, for the plaintiff.

*H. Bleecker.* 1. The judge, before whom the cause was tried, ought to have granted the motion for a nonsuit. Mere possession is not sufficient to enable a plaintiff to maintain an action of trespass. He must show property or title, either general or special, in the chattel.*

*Bac. Abr.
Trespass, (C.)*

2. The judge ought to have received the evidence offered by the defendants, in justification, or in mitigation of damages. If the ship was liable to forfeiture, under the law of the *United States*, it was the duty of the *collector* to make the seizure, and he was perfectly justifiable.

The 27th section of the act of *February* 18th, 1793, (*Laws of U. S.* vol. 2. p. 160.,) makes it the duty of the officer of the revenue to go on board vessels, and to search and examine whether there has been any breach of the laws of the *United States.* The right to seize is independent of any judicial investigation or decision. To authorize a seizure, it is enough that the vessel is found in the predicament mentioned in the act of congress. By the act of the 5th of *June*, 1794, (*Laws of U. S.* vol. 3. p. 88. 3 *Cong.* sess. 1. ch. 50. sect. 3.,) it is declared, " that if any person shall, within any of the ports, harbours, bays, rivers, or other waters of the *United States,* fit out and arm, or attempt to fit out and arm, or procure to be fitted out and armed, or shall knowingly be concerned in the furnishing, fitting out, or arming of any ship or vessel, with intent that such ship or vessel shall be employed in the service of any foreign prince or state, to cruise or commit hostilities upon the subjects, citizens, or property of another foreign prince or state, with whom the *United States* are at peace," &c.—" every such person, so offending, shall, upon conviction, be adjudged guilty of a high misdemeanor," &c.—" and every such ship or

vessel, with her tackel, &c., shall be forfeited, one half to the use of any person who shall give information of the offence, and the other half to the use of the *United States.*" Now, the defendants offered to prove, that the *American Eagle* was fitted out, and armed, &c., with intent to be employed in the service of one foreign state, against the subjects or citizens of another foreign state. Then, were not *Petion* and *Christophe* foreign princes, or sovereigns, and their territories foreign states, within the meaning of this act? It is notorious that the whole island of *Hispaniola*, or *St. Domingo*, has been independent of *France* and *Spain* for above 19 years. The mother country has not, during that period, exercised dominion over that island. It is enough that there was a regular government, *de facto*, exercised there, independent of the mother country, to bring the case within the mischief intended to be prevented by the statute. No matter what the form of the government, or the extent of the territory, might be, so long as it is a sovereign and independent state. *Petion*, or *Christophe*, in consequence of this ship being sent to the one or the other, might have deemed it an act of hostility, and have fitted out cruisers to capture the vessels of the *United States*, an evil which the act of congress was intended to prevent. Nations, or states, according to *Vattel*,* are societies of men united together for their mutual safety and advantage. The island of *Hayti* contains near a million of inhabitants. The present governments are as regular and enlightened as most of the boasted governments of the world. That of *Petion* is modelled after that of the *United States;* and the wisdom and moderation of their *president* have been highly extolled. *Christophe* is a king, and the monarchy is hereditary, and is supported by orders of nobility and officers of state. Each government maintains a regular army of 40,000 men. Parochial schools are established throughout the whole island of *Hayti;* an institution superior to any to be found in *Europe.*(a) It is impossible to regard them any longer as colonies.

* *Vatt. Droit. des Gens.*

For the objects of the statute, it is not essential that the government of the *United States* should recognise and publicly acknowledge the independence of the government of either of these sovereigns; the mischief intended to be prevented might equally exist. It was a measure of policy in our government, when, at the instance of the *French* government, in 1805, or

(a) See *Edin. Rev.* vol. 24. p. 128, No. 47. *Nov.* 1814.

1806, it prohibited all intercourse with that part of the island of St. Domingo, formerly subject to France. It was dictated by the fear of occasioning a rupture with France. That act, therefore, furnishes no evidence of the real opinion of this government as to the independence of St. Domingo. The British government, though it made no positive declaration on the subject, has recognised ports or places in St. Domingo, as not under the dominion of France; and on that ground vessels, carrying on trade to St. Domingo, have been acquitted in the court of admiralty, as not subject to the penalties of trading from an enemy's colony.* "When a nation becomes divided," says Vattel,† "into two parties absolutely independent, and no longer acknowledging a common superior, the state is dissolved, and the war between the two parties, in every respect, is the same with that of a public war between two different nations." They are to be regarded, by foreign nations, as equally independent.

Though the court gave judgment against the plea, on the demurrer, which the defendants' counsel declined arguing; yet, when the question is again raised in the same or another case, the court will not refuse to hear an argument, and to pronounce a decision on it; for it may be presumed that the court decided the demurrer on some other point.

3. But it will be said that the decree of the district court of the United States is conclusive against the justification set up by the defendants. The defendants were not parties to that decision, either in name or interest. The libel was in the name of the United States, against the ship called the American Eagle, her tackle, &c., and the prosecution was carried on by the attorney of the United States. It is the duty of the attorney of the United States to prosecute all offences against the laws; and the revenue officers are required to make seizure; one half of the penalty goes to the informer; but it is not stated in the bill of exceptions, and it nowhere appears, that the defendants were the informers. If the decree of the district court is to be held conclusive, it will violate the well-known principle, that no man shall be condemned unheard. But, admitting the general rule to be that the sentence of a court of exclusive jurisdiction, directly on the point, is conclusive, upon the same matter coming incidentally in question in a civil case, in another court; yet there is an acknowledged distinction between a sentence of conviction,

* Manilla. 1 Edw. Adm. Rep. 1. Append. A. B. C.
† Droit des Gens. Liv. 3. ch. 18. s. 293, 294, 295.

or condemnation, and a judgment of *acquittal.*\* An acquittal does not ascertain any precise fact; it may be that sufficient evidence was not produced on the part of the public prosecutor. " A conviction is conclusive evidence of the fact, but an acquittal, as *Buller* observes, is no proof of the reverse." A verdict on a criminal proceeding, as an indictment for an assault and battery, libel, &c., is not conclusive in a *civil* suit for the private injury. The case of *Scott* v. *Shearman and others*,† will be cited on the other side, as to this question; but it will be seen, that Mr. Justice *Blackstone*, who gave the reasons for the decision, puts it on the ground that the plaintiff was a party in interest in the proceedings in the court of exchequer. Lord *Coke*, in *Bunting* v. *Lepingwel*,‡ gives a very quaint reason for regarding the sentence of the *ecclesiastical* court as conclusive, namely, *cuilibet in sua arte perito est credendum ;* it is a reason that would hardly be admitted at the present day. The truth is, that this notion has grown up in *England*, from respect paid to the decisions of certain courts of peculiar jurisdiction ; as, in regard to their *ecclesiastical* courts, Lord *Coke* observes, " the judges of our law ought (although it be against the reason of our law) to give faith and credit to their proceedings and sentences, and to think that their proceedings are consonant to the law of holy church."

But, we contend, that this whole doctrine, as to the conclusiveness of the sentences of courts of peculiar jurisdiction, has been broken down by the decision of the *court of errors*, in the case of *Vandenheuvel* v. *The United Ins. Co.*§ The same reasons, and the same authorities, were urged by the judges of the supreme court, in that case, in favour of the conclusiveness of foreign sentences, as are stated in support of the conclusiveness of the decisions of courts of peculiar jurisdiction ; nay, there were other and stronger reasons brought forward in favour of the former, which cannot be applied to the latter. If, then, by the decision of the court of last resort, in this state, the whole doctrine as to the conclusiveness of foreign sentences is done away, *a fortiori*, must the rule, as to the conclusiveness of the decrees of courts of *peculiar* jurisdiction, be deemed as abrogated.

*Colden*, contra. 1. The decree of restitution shows that the plaintiff had the title as well as the possession. In the admiral-

ALBANY, January, 1816.

HOYT v. GELSTON.

\* *Bull. N P.* 245. *Peake's Law of Ev.* 48, 49. (3d edit.) and n. 5 *Term Rep.* 255, 1 *Harg. Law Tracts,* 472

† 2 *Wm. Bl. Rep.* 977.

‡ 4 *Co.* 29.

§ 2 *Caines' Cases in Error,* 217—351. S. C. 2 *Johns. Cases,* 127 —168, 451—468.

ALBANY,
January, 1816.

HOYT
v.
GELSTON.

*4 Cranch, Rep.
2—28.

ty court, all persons who have any claim or title, are called on to appear and enter their claims, and the court decides who has the right, and its decree is evidence of title or property. The principles on which admiralty courts proceed, are stated in *Jennings* v. *Carson.** Documentary evidence of title in the vessel was not necessary; parol evidence of acts of ownership would be sufficient. But we contend that, in this action against a *tort-feasor*, it is not necessary for the plaintiff to show title or ownership.

[THOMPSON, Ch. J.    You need not press this point.]

2. Then as to the evidence offered in justification. In reason and principle, it must belong to the government, not to its courts, to declare the facts, as to its political relations, or whether a foreign people are to be deemed and treated as an independent nation.

This very point came under the examination of the supreme court of the *United States*, in the case of *Rose* v. *Himely.*† Chief Justice *Marshall*, in giving the opinion of the court, in that case, (*March* 2, 1808,) takes notice of the arguments urged in favour of treating the government of *St. Domingo* as an independent sovereign; and that the doctrines of *Vattel* had been referred to in support of the argument. He very justly observes, that the language of *Vattel* " is addressed to sovereigns, not to *courts.* It is for government to decide, whether they will consider *St. Domingo* as an independent nation; and until such decision shall be made, or *France* shall relinquish her claim, courts of justice must consider the ancient state of things as remaining unaltered, and the sovereign power of *France*, over that colony, as still subsisting." It is worthy of observation, that the *English court of appeals*, (*March* 17th, 1808,) and Sir *William Scott*, in the high court of admiralty, (*April* 1st, 1808,) before whom the same question arose, almost at the same time, lay down precisely the same rule, that as there had been no declaration or act of the government on the subject, their courts must still regard that island as a colony of *France.*‡ " That it always belongs to the government of the country to determine in what relation any other country stands towards it; that is a point upon which courts of justice cannot decide." The same principle was, also, recognised by the present *Chancellor*,

† 4 Cranch's Rep.
241—272.

‡ 1 Edw. Adm.
Rep. 1—3. App.
(D.) Pelican.

(KENT,) when an application was made to him, for an injunction, in this very cause.

Again, the *non-intercourse acts*, as they are called, of the *United States,*\* prohibited all commerce with *France* and *Great Britain*, their *colonies and dependencies*. Now, it is a remarkable fact, that, at the very time these defendants made this seizure of the *American Eagle*, for being armed and fitted out to aid one of these *foreign and independent states*, in the island of *St. Domingo*, against the other, they had made two seizures, the schooner *James* and the schooner *Lynx*, for a violation of the *non-intercourse act*, in trading with *St. Domingo*, a *colony* and *dependency* of *France*. It is well known that, in 1809, when the plaintiff's vessel was seized, the libels, in the two other cases, were pending in the district court. Thus, these defendants could blow hot and cold, as best suited their purpose.

But we contend, that the question of forfeiture or not, has been decided by a court of competent jurisdiction, and all parties are now concluded by that decision. It is a settled rule of law, that where a court proceeds *in rem*, its decision, as to the property, is conclusive; and the right cannot be tried over again.† It is said, however, that a sentence of acquittal is not equally conclusive; but *Peake*, in the third edition of his treatise on *Evidence*,‡ takes further notice of this distinction, and recognises the case cited from *Viner*, before Baron *Price*, that an *acquittal* in the exchequer was conclusive; and the case of *Lane* v. *Digbey*, cited by *Buller*, (*N. P.* 244.,) is to the same effect.(*a*)§ The court of errors, in reversing the decision of the supreme court as to the conclusiveness of foreign sentences, proceeded on the ground of the great abuse of the general principle in the *English* courts of admiralty. They never intended, as has been suggested, to subvert the whole law on this subject. It would be attended with most oppressive and mischievous consequences, if courts of justice, of distinct and competent jurisdictions, were not to respect the judgments of each other, directly on the same subject, between the same parties.

If this court now admit the evidence offered, it will be contrary to their judgment pronounced on the general demurrer to

ALBANY,
January, 1816.

HOYT
v.
GELSTON.

\* *March* 1, 1809,
10 *Cong.* sess. 2.
ch. 91. *June* 28,
1809, 11 *Cong.*
sess. 1 ch. 9.
*May* 1, 1810,
ch. 66.

† 12 *Vin. Ab.* 95.
*Ev.* (A. b. 22.)

‡ *Peake*, (3d edition,) 49. 78, 79,
80. 11 *St. Tri.*
218 222. 235.
261. *Amb.* 756.
2 *Str.* 961.
§ *Cooke* v. *Sholl*,
5 *Term Rep.* 255.

---

(*a*) In a late " Treatise on the Law of Evidence," (1815,) by *Phillips*, ch. 3. sect. 3. p. 254—259., where this subject is handled, no new cases are cited; and he seems to consider the question, as to the conclusiveness of a sentence of *acquittal*, as still undetermined, as the case of *Cooke* v. *Sholl* (5 *Term Rep.* 255.) turned on a different point.

ALBANY,
January, 1816.

HOYT
v.
GELSTON.
S. C. 8 Johns.
Rep. 179.

the plea. And it may be observed, that these defendants applied to this court for an *imparlance* in this cause,* in order that they might reap the benefit of the decree of the district court, which they alleged would be conclusive, if the seizure was adjudged to have been rightfully made, or for reasonable cause.

If the evidence was not admissible in justification, it is equally inadmissible in mitigation of damages.

*Van Vechten,* in reply, said, it was a well-settled principle, that where subjects revolt and declare themselves independent, and maintain that independence, it is no violation of duty, in a foreign nation, to treat them as an independent state. We may look to the government, *de facto,* without entering into an examition of the legality of the means by which it has been established.† Surely the governments at *St. Domingo* have every claim to be respected as independent.

As to the admissibility of the evidence : it is now the established law of this state, that foreign sentences are only *prima facie* evidence. The doctrine laid down in the court of errors has been acted on by this court‡. The principle of that decision applies to the judgments of other courts. The decrees of other courts are never conclusive in other suits, between different parties. These defendants were not parties to the suit in the district court ; they had no claim to put in.

The counsel then proceeded to examine the reasoning and authorities relative to this rule of evidence, but his arguments were, substantially, the same as those of the opening counsel.

SPENCER, J., delivered the opinion of the court. The bill of exceptions, taken at the trial, presents two points for the consideration of the court :

1. Was there sufficient evidence of property in the plaintiff ?
2. Ought the evidence, overruled at the trial, to have been admitted either in mitigation of damages, or as a bar to the suit ?

With respect to the first point, the bill of exceptions states, that the plaintiff gave in evidence, that, at the time of the seizure of the ship *American Eagle,* by the defendants, she was in the actual, full, and peaceable possession of the plaintiff ; and that, on the acquittal of the vessel in the district court, it was decreed that she should be restored to the plaintiff, the claimant of the vessel in that court ; and the plaintiff then gave in evi-

dence the proceedings in the district court, by which the above ALBANY, facts fully appeared. In this stage of the cause, and after the January, 1816. plaintiff had proved the seizure of the ship by the defendants, HOYT and her value, a motion was made by the defendants' counsel, v. that the plaintiff should be nonsuited, on the ground that there GELSTON. was not sufficient evidence to entitle the plaintiff to a verdict, no right or title having been shown in the plaintiff to the ship. We are of opinion that the motion for a nonsuit was correctly overruled. It is a general and undeniable principle, that possession is a sufficient title to the plaintiff in an action of trespass, *vi et armis*, against a wrong doer. (1 *East's Rep.* 244. 3 *Burr.* 1563. *Willes's Rep.* 221. *Esp. Dig.* 403. *Gould's* edit. part 2. 289.) The finder of an article may maintain trespass against any person but the real owner; and a person having an illegal possession, may support this action against any person other than the true owner. (1 *Chitty's Pl.* 168. 2 *Saund.* 47. *d.*) If these principles are applied to this case, it will appear, at once, that the evidence of the plaintiff's right to the ship was very ample. He was not only in the actual, full, and peaceable possession of this ship, but he was the claimant of her in the district court; and she has been awarded to him by a sentence of that court. The defendants make this objection without a pretence of right, on their part, as they stand before the court in the character of *tort-feasors*.

In the progress of the cause, the plaintiff proved himself to be the owner of the ship; and even if it was admitted that the proof before given was insufficient, a new trial ought not to be awarded on the ground of want of proof of title in the plaintiff, when that very proof was before the jury, and is now spread on the record. In no point of view have the defendants entitled themselves to a new trial on this part of the bill of exceptions.

Under the second exception, it has been urged, that the matters set forth in the notice ought to have been admitted in mitigation of damages, and as a bar to the suit. They were overruled in both respects; first, because they formed no bar to the suit; and, secondly, because the plaintiff's counsel had distinctly stated and admitted, that the defendants had not been influenced by any *malicious* motives in making the seizure, and that they had not acted therein with any view or design of oppressing or injuring the plaintiff. The presiding judge held that such admission precluded the plaintiff from claiming any damages

ALBANY,
January, 1816.

HOYT
v.
GELSTON.

against the defendants by way of punishment or smart money, and that after such admission the plaintiff could recover only the actual damages sustained, and he gave that direction to the jury.

The defendants have no cause of complaint, that the facts set out in the notice were not admitted in mitigation of damages; for the admission made by the plaintiff's counsel, was held to preclude him from recovering any thing beyond the actual damages sustained. If the matters contained in the notice do not bar the plaintiff's recovery, he was entitled, at all events, to recover his actual damages; and it is not pretended that he has recovered beyond that amount.

The question, then, presents itself, and it is the only grave one in the case, whether the matters contained in the notice, if proved, would operate as a bar to the plaintiff's right of action. This question, in the state of the present record, we should be justified in refusing to hear discussed. The pleas in bar embrace the same matters insisted on in the notice. These pleas have been demurred to, and have been adjudged to be bad. It is true there was not an argument upon them, but it was not a judgment by default. When the cause was called, the defendants' counsel appeared, and declined to argue them, whereupon judgment was given for the plaintiff, on the defendants' counsel declining the argument. This act can be viewed in no other light than as evincing a consciousness, on the part of the counsel, that the pleas were not to be supported; and it is a well-settled principle of practice, that no court will hear the merits of a case discussed after judgment. Virtually, we have already declared the pleas bad, and we should be justified in refusing to hear counsel tell us that a decision in the same cause is incorrect. We were disposed, however, as it had been suggested that this cause would not probably rest here, to hear the points argued; and, on two grounds, we are decidedly of opinion, that the facts stated in the notice, if proved, ought not to preclude the plaintiff's recovery. We believe that the sentence of restitution, in the district court, is final and conclusive; that sentence not having been appealed from, and still remaining in full force.

It appears that this ship was libelled, as forfeited to the *United States*, on the ground that she was fitted out at *New-York*, with the intent that she should be employed in the service of a foreign state, to wit, that part of the island of *St. Domingo* which was under the government of *Petion*, to commit hostilities upon the

subjects of another foreign state, with which the *United States* of *America* were then at peace, to wit, that part of the island of *St. Domingo* which was then under the government of *Christophe*, contrary to the statute in that case provided.

ALBANY,
January, 1816.

HOYT
v.
GELSTON.

· The plaintiff appeared before the district court, as claimant of the ship, and filed his answer to the libel; and, on full hearing; the libel was dismissed, and the ship was decreed to be restored to the plaintiff; and a certificate of reasonable cause for the seizure was denied.

It would seem, at once, to be unjust and improper, in an action brought to recover damages for the seizure of property, after it has been restored by the sentence of a court of competent jurisdiction, for any other court, and, especially, a common-law court, to rehear the case, and to examine again into the propriety of the sentence, in a collateral manner. It would impugn a very salutary maxim, *nemo debet bis vexari pro eadem causa;* and it would overturn the well-settled principle, that the judgment of a court of competent jurisdiction, proceeding upon a matter of which it had cognizance, cannot be impeached collaterally, but that it stands firm until vacated or reversed. But upon authority, without regarding the unreasonableness of the principle contended for, the sentence in this case is conclusive. In *Scott* v. *Shearman and others,* (2 *Wm. Bl. Rep.* 977.,) trespass was brought against custom-house officers for breaking and entering the plaintiff's house, and taking away his goods. The defendants gave in evidence a copy of the record of condemnation of the court of exchequer, condemning a quantity of geneva, (the goods taken from the plaintiff,) and the principal question was, whether this was conclusive. Justice *Blackstone* delivered the unanimous opinion of the court, that the condemnation was conclusive evidence to all the world that the goods were liable to be seized, and, therefore, the action would not lie. ·

In *Henshaw* v. *Pleasance and others,* (2 *Wm. Bl. Rep.* 1176.,) *Le Grey,* Ch. Justice, *Gould* and *Nares,* Justices, referring to the case of *Scott* and *Shearman,* say, it has been uniformly held, for above a century, that a condemnation of goods, in the exchequer, is conclusive evidence against all the world.

It has been suggested, by *Peake,* that a judgment of acquittal does not seem to have so strong an operation in favour of the party; but, in reference to a case like the present, we perceive no reason for the distinction, nor can such a distinction be sup-

ported by authorities. In an action of *trover* for a parcel of brandy, before Baron *Price, Trinity* vacation, 1716, an information in the name of the attorney general, in the exchequer, and an acquittal thereupon, and a judgment were given in evidence, the brandy being seized, &c.; to which the other side objected; but the judge refused to admit any evidence against this determination, or to let the parties in to contest the fact over again which had been tried on the information. (12 *Vin. Ab.* 95. A. b. 22. pl. 1.) In *Cooke* v. *Sholl*, (5 *Term Rep.* 255.,) Lord *Kenyon,* unhesitatingly, declared, that a judgment of acquittal, in the exchequer, being a judgment *in rem*, was conclusive as to the question of the illegality of the caption. In *Meadows and wife* v. *The Dutchess of Kingston,* (*Amb.* 756.,) a bill was filed in chancery, stating the will of the Duke of *Kingston*, the devise by him of his personal estate to the defendant and his wife; that it was founded on fraud committed by the defendant, in imposing herself on the duke as a single woman, thereby inducing him to marry her, when at the time she was the wife of a Mr. *Hervey,* and incapable of becoming the wife of the duke, praying an account of the personal estate of the duke, &c. &c. The defendant, among other things, pleaded a suit in the *consistorial court of London*, instituted by her against Mr. *Hervey*, for jactitation of marriage, and a cross allegation by Mr. *Hervey*, that he was married to her; and that, upon hearing the cause, the judge, by his definitive and final sentence, declared that the defendant then was a spinster, and free from all matrimonial contracts or espousals, more especially with *Hervey.* This plea was argued, and Lord Chancellor *Apsley* held the sentence of the *consistorial* court to be conclusive; and he laid down the rule to be, that whenever a matter comes to be tried in a collateral way, the decree, sentence, or judgment, of any court having competent jurisdiction, shall be received as conclusive evidence of the matter so determined. The only distinction he admitted was, where the sentence is not *ex directo ;* if it be not, it seems not to be conclusive. (*Peake,* 3d edit. 76—80., and notes, where other cases are cited.) In the present case the question was direct; was this ship forfeited for the causes set forth in the libel ? The answer of the district court is, "she was not." We, therefore, have no hesitation to say, that, in a case like the present, the sentence of acquittal is conclusive that the seizure was illegal.

It was suggested, on the argument, that the decision in the district court is to be regarded as the sentence of a foreign court, and is, therefore, examinable; but that court cannot be so considered. It is a court held in and for the district of *New-York*. It is a court constituted under the constitution and laws of the *United States*, and it is just as much a *domestic* tribunal as this court.

If, however, the question of the legality of the seizure could be inquired into, we are equally clear that the matters relied on by the defendants cannot avail them. The supposed ground of the forfeiture of this ship has been already stated; it was that she was fitted out within the *United States*, with intent that she should be employed in the service of a foreign state, to wit, that part of *St. Domingo* which was under the government of *Petion*, to commit hostilities upon the subjects of another foreign state with which the *United States* were then at peace, to wit, that part of *St. Domingo* which was then under the government of *Christophe*.

To work a forfeiture of this ship under the act of congress, (*L. U. S.* vol. 3. p. 88.,) it was incumbent on the defendants to make out that that part of *St. Domingo* which was under the government of *Petion*, as also that part which was under the government of *Christophe,* were, respectively, independent states, within the meaning of the act. On this part of the case, this court adopt the opinion expressed by Chief Justice *Marshall*, in *Rose* v. *Himley*, (4 *Cranch*, 272.) " The colony of *St. Domingo*, originally belonging to *France*, had broken the bond that connected her with the parent state, and declared herself independent, and was endeavouring to support that independence by arms. *France* still asserted her claim of sovereignty, and had employed a military force in support of that sovereignty. A war, *de facto*, then, unquestionably existed between *France* and *St. Domingo*. It has been argued that the colony having declared itself a sovereign state, and having thus far maintained its sovereignty, by arms, must be considered and treated, by other nations, as sovereign in fact, and as being entitled to maintain the same intercourse with the world that is maintained by other belligerent nations. In support of this argument the doctrines of *Vattel* have been particularly referred to; but the language of that writer is obviously addressed to sovereigns, not to courts. It is for government to decide whether they will consider *St. Do-*

ALBANY,
January, 1816.

*mingo* as an independent nation; and until such decision shall be made, or *France* shall relinquish her claim, courts of justice must consider the ancient state of things as remaining unaltered, and the sovereign power of *France* over that colony as still subsisting."

On the trial of this cause it was proved that, under the non-intercourse act, as late as 1809, vessels and cargoes were libelled, on the seizure of the defendants, for holding intercourse with *St. Domingo*, as a dependency of *France*; and that our government have so considered that island is a matter of public notoriety. If these courts are to consider the sovereign power of *France* as still subsisting over that colony, the fitting out of this ship, as stated in the pleas and notice, was not an infraction of the statute; for neither *Petion* nor *Christophe* were sovereign princes or states; and it was not, therefore, a fitting out with an intent that this ship should be employed in the service of any foreign prince or state, to cruise or commit hostilities upon the subjects, citizens, or property of any other foreign prince or state, with whom the *United States* were at peace.

For these reasons, we are of opinion that the motion for a new trial must be refused, and that the plaintiff have judgment on the verdict.

