Booth *vs.* Terrell.

---

No. 5.—MARTHA BOOTH, plaintiff in error, *vs.* RICHMOND TERRELL, defendant in error.

[1.] The term *lend*, when used in a will, is generally equivalent to *gift*.

[2.] When the will shows that the testator did not intend the legal estate to pass to the legatee, then the word *lend* has its appropriate meaning.

[3.] A loan implies that the use of a thing, is parted with for a limited time and for a special purpose—the right of property remaining in the lender. An estate, therefore, which can never revert, cannot be a loan.

[4.] A remainder is the remnant of an estate, limited to arise immediately on the determination of a precedent particular estate; and it always creates a *new* estate in the remainder-man.

[5.] It has never been decided by this Court, that a *reversion* in personal property could not exist by parol.

[6.] A reversion is the return of an estate to the grantor and his heirs, after the grant is over; a gratuitous permission, by the owner to a third person, to use the chattel for a specified time, the proprietary interest still continuing in the owner, is not a *reversion*.

[7.] A loan is the bailment of an article for a certain time, to be used by the borrower without paying for its use.

[8.] The borrower is bound to take good care of the thing borrowed; to use it according to the intention of the lender; to restore it at the proper time, and to restore it in a proper condition.

[9.] The borrower must return the increments or offspring of the thing lent.

[10.] A loan being strictly gratuitous, the lender may terminate it whenever he pleases.

[11.] The thing loaned is to be restored to the lender, unless it has been agreed that the restitution shall be to some other person. If the lender be dead, it is to be restored to his personal representative, if known.

[12.] During the loan, nothing passes to the borrower but a mere right of possession and user of the thing during the bailment.

[13.] An action of trespass or trover, will lie in favor of the lender, against

a stranger who has obtained a wrongful possession or has made a wrongful conversion of the thing loaned.

Trover, in Newton Superior Court.    Tried before Judge STARKE, March Term, 1854.

This was an action of trover brought by John P. Booth and his wife, Martha Booth, against Richmond Terrell, for the re-covery of eight negro slaves, to-wit: Letty and seven children, named in the declaration.    Pending the action John P. Booth died, and the same proceeded in the name of the wife.

The defendant pleaded the general issue and the Statute of Limitations.

On the trial, plaintiff proved by two witnesses, that in the year 1820, in Jefferson county, Richard Hodges, the father of Mrs. Booth, *loaned* Letty, the negro woman sued for, to Rich-mond Terrell and his wife, for and during the life-time of the latter, with the understanding, that at the death of Mrs. Ter-rell, the said girl Letty should be returned to his daughter, Martha Hodges, the plaintiff in the action.

. . Plaintiff also read in evidence the will of Richard Hodges, the 2d item of which read as follows: "I give and bequeath to my daughter, Martha Hodges, eleven negroes, named as fol-lows : Mary and her four children, (naming them and others,) and Letty; the last named in the possession of Mrs. Terrell, and to remain so during Mrs. Terrell's natural life; then to become the property of my daughter, Martha Hodges".    The plaintiff also proved the death of Mrs. Terrell, the conversion and value of the negroes and closed.

The defendant introduced testimony, which it is unnecessary to set out here.

The Court charged the Jury, "that a loan of a slave by one person to another, for the life of the person to whom the prop-erty was loaned, or for the life of his wife, by a parol agree-ment that the slave should be returned to the owner or his heirs, at the death of such person, vested an absolute title to the slave, in the person to whom it was loaned..    And if the

Jury believed that Richard Hodges was the owner of the ne-
gro girl Letty, and that he loaned her to the defendant or his wife
upon a parol contract, that she was to be returned to him or
his heirs, after the death of defendant's wife, that the defendant
thereby acquired an absolute fee simple title to the negro, and
the plaintiff could not recover; but the Jury ought to find a
verdict for the defendant".

To which charge of the Court, Counsel for plaintiff excepted
and has brought up the same for review.

EZZARD & W. W. CLARK, for plaintiff in error.

FLOYD, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is an action of trover by Martha Booth against Rich-
mond Terrell, for eight negroes. The plaintiff relies on the
following title, namely : that her father, Richard Hodges, in-
termarried with Louisa Terrell, the daughter of the defendant;
and by said marriage, acquired the title to Letty, who, together
with her children, constitute the property in dispute. That
Mrs. Hodges died some short time after her intermarriage with
plaintiff's father; and that thereupon, Richmond Hodges
loaned to his mother-in-law, Mrs. Terrell, wife of the defend-
ant, and at her special request, and by the consent and appro-
val of the defendant, the girl Letty, to be held and enjoyed by
her as a loan, during her life-time; and at her death, one of
the witnesses swears, the negro was to be returned to plaintiff,
who is the daughter of Richard Hodges by a former wife. The
other witness testifies to the same contract, in substance, except
that he states the girl was to be returned to Richard Hodges or
his heirs. Richard Hodges died in 1824; and by his will, be-
queathed Letty to his daughter, the plaintiff in this action.

The Court charged the Jury that the loan of a slave by one
person to another, for the life of the borrower, by a parol agree-
ment that the slave should be returned to the lender or his

heirs, at the death of the borrower, vested an absolute title to the slave in the borrower.

This charge is excepted to, and the only question to be determined is, did the Court submit the Law of the case correctly, upon the facts proven?

Counsel for the defendant below and in error, insist that the charge of the Court is sustained by the decision of this Court in *Bryan vs. Duncan* (11 *Ga. R.* 67.) And also by the doctrine ruled first by this Court in *Kirkpatrick vs. Davidson* (2 *Kelly's R.* 301,) and repeatedly recognized since, that a remainder in slaves cannot be created by parol.

[1.] The point decided in *Bryan vs. Duncan* was, that in a *will*, the word *lend* was sometimes construed to be equivalent to *give*. And in support of this principle, *Hinson and Wife vs. Pickett and Myers, adm'r, vs. Pickett* (1 *Hill's Ch. R.* 35,) was relied on.

[2.] But what was the reason given in both of these cases, for holding that in those wills the word *lend* meant *gift?* It was because " the testator evinced a clear intention to part with the *entire dominion* over the party bequeathed. After his death, the property never could have reverted to his executors. A *final* disposition of it is made by the testator". Such is the language of this Court in *Bryan vs. Duncan.*

And in the case in *Hill,* Judge O'NEALL says: " the term. *lend,* when used in *a bequest,* is *generally* equivalent to *give.* In some special cases, it has its appropriate meaning : as in *Baker vs. Baker & Red,* decided by this Court in December, 1831. But in such cases, there is something which shows that the testator did not intend the legal estate to pass to the legatee. In the will under consideration, the testator has not manifested any such intention; he uses the word to pass from him the entire property in the chattel; and it is worthy of remark, that he uses the word, (*lend*) not in relation to the life-estate, which he had created, as he supposed, for his daughter, but also to the absolute estate in remainder, which he also supposed he had created in favor of her children.

[3.] The testator parts with the entire dominion in the prop-

erty; and it is absurd to say, that an estate which can never revert, can be a loan, which implies that *the use* of the thing is parted with for a *limited time*, or for a special purpose, and the right of property remains in the lender. · It is therefore clear,. that the word *lend, in this will*, must be considered as synonymous with *give*".

The cause of the defendant cannot derive much aid from these precedents.    First, this is not a *will*, but a *gift, inter vivos;* and secondly, so far from the lender's manifesting any intention to part with the title to this property, it is stipulated, expressly, that it shall be returned to him or his heirs, at the death of Mrs. Terrell.

[4.] Is this an attempt by Richard Hodges, to create, by parol, a *remainder*, in personal property ?    What is a remainder ? The remnant of an estate, limited to arise immediately on the determination of a precedent particular estate.    Read the testimony of Sarah Smith and George C. Hodges, and I am quite sure that it never would occur to any legal mind that Richard Hodges, by the loan which he made of Letty to Mrs. Terrell, for life, intended to create a *new estate* in this negro, in himself, at the death of his mother-in-law.    And this he would do,. in legal contemplation, provided it were a remainder.    One of the rules regulating remainders is, that they must pass out of the grantor, at the time the particular estate is created.    And yet, Mr. Terrell, the defendant, declared, at the time that Hodges parted with the girl, that he had no claim on her, and that his wife only wanted her as a loan; and that he would return her at the old lady's death.

[5.] It has never been decided by this Court, that a *rever- sion*, in personal property, could not be created by parol; although, from the use of that word, in the first opinion delivered upon this subject, (*Kirkpatrick vs. Davidson*, p. 302,) *incautiously perhaps*, it may be inferred that the Judge who wrote it out, supposed, at the time, that the rule applied to *reversions* as well as *remainders*.    Be this as it may, we are clear that this is neither a remainder or reversion.

[6.] We have attempted to show that this is no remainder.

Is it technically a *reversion?*    What is a reversion?    It is the return of an estate to the grantor and his heirs, after the grant is over.    But here no estate, as we shall presently see, ever was granted; but a mere gratuitous permission to Mrs. Terrell to use the servant for a specified time—Hodges still continuing to be the owner of the slave, to all intents and purposes.

[7.] This, then, is neither more nor less than a loan—a contract of every-day occurrence, especially between fathers-in-law and sons-in-law.    In this particular instance, however, owing to the peculiar circumstances of the case, the relative position of the parties to the transaction, happens to be reversed.    The son-in-law is the lender, and the father-in-law, or his wife, the borrower.

Chancellor *Kent* defines a loan to be a bailment of an article for a certain time, to be used by the borrower, without paying for the use.    (2 *Kent's Com. Lecture* 40, *p.* 573, *4th Edition.*) And this language is copied, almost *verbatim*, from Sir *William Jones*.    See *Treatise on Bailments, pp.* 118, 217.    *Ayliffe* says, "it is a grant of something, made in a gratuitous manner, for some certain use and for a certain term of time, expressed or implied, to the end that the same species should be again returned or restored again to us; and not another species of the same kind or nature, and this in as good plight as it was delivered".    (*Pandects, B.* 4, *tit.* 16, *p.* 516.)

[8.] The obligation of the borrower is, to take proper care of the thing borrowed—to use it according to the intention of the lender—*to restore it at the proper time,* and to restore it in a proper condition.    (*Story on Bailments,* §§232, 254, 255.)

[9.] Not only is the borrower to make a return of the thing, at the time, and in the place, and in the manner contemplated by the contract, but he must make a like return of all the increments and offspring of the thing lent.    (*Ib.* §257.)

[10.] The continuance of the loan rests upon the good pleasure and good faith of the lender, and is therefore strictly precarious.    A loan being strictly gratuitous, the lender may terminate it whenever he pleases.    (*Story on Bail.* §277.    *Viner's*

*Ab. Bailment D.  Bacon's Abr. Bailment D.  9 Cowen,* 687.
*9 East.* 49.  1 *Dane's Ab. Ch.* 17, *Art.* 4, §10.  2 *Leon. R.*
30, 89.  *Dyer,* 48 *b.  Cro. Jac.* 687.  2 *Roll. R.* 460.  1
*Str. R.* 165.  *Shepherd's Epitome—Countermand.*

[11.] The thing loaned is to be restored to the lender, unless
it has been agreed that the restitution shall be to some other
person.  If the lender be dead, it is to be restored to his per-
sonal representative, if known.  (*Story on Bail.* §262.)

[12.] During the period of the loan, the lender still retains
the sole proprietary interest, and nothing passes to the bor-
rower but a mere right of possession and user of the thing, du-
ring the continuance of the bailment:

[13.] So that an action for a trespass or conversion, will lie
in favor of the lender against a stranger, who has obtained a
wrongful possession or has made a wrongful conversion of the
thing loaned.  (11 *Johns.* 285.  7 *Cowen,* 753.  9 *Ib.* 687.  2
*Saunders, by Williams,* 47, *b.  Bacon's Abr. Trespass C.* 2.
*Ib. Trover C.*  1 *T. R.* 480.  2 *Camp.* 464.  8 *Johns.* 432.
13 *Johns.* 141.  2 *Kent's Com. Lect.* 40, *p.* 574, 4*th Edition.*)

The foregoing propositions, fully warranted as they are by
adjudicated cases, demonstrate, so clearly, the nature of this
transaction, to-wit: that it is neither a *remainder* nor a *reversion,*
but a *loan,* for a definite period, with the express understanding,
that at the death of Mrs. Terrell, the woman, and of course her
offspring, born during the lifetime of Mrs. Terrell, should be
returned to Richard Hodges, if living; or if dead, to his daugh-
ter Martha, or his heirs: I say, that this so unmistakably, is
the legal character of this contract, that we are unwilling to
elaborate it further.

I have said that these contracts of gratuitous loans, were sub-
jects of daily occurrence, in the actual business of human life.
This record shows that the very defence set up by Richmond
Terrell, is founded upon the validity of such contracts.  Whether
the generous confidence bestowed by either or both of these
parties, in the other, has been abused, remains to be seen.