# Coker *v.* The State.

*Indictment for Selling or Giving Liquor to Minor.*

1. *Sale, barter, exchange, gift, and loan,* defined and distinguished.

2. *Selling or giving liquor to minor.*—On a prosecution for selling or giving liquor to a minor (Code, § 4038), who testified that he applied for some whiskey to the defendant, who refused to sell him any, saying that he had none for sale, being a practicing physician; that he then *borrowed* a pint of whiskey from the defendant; and that a few days afterwards, as defendant's wagon was going to the city in which he bought his goods, "not having any whiskey on hand to return that which he had borrowed, he handed the defendant some money, and requested him to buy as much whiskey as he had borrowed, and in that way returned what he had borrowed:" *Held,* that the court erred in instructing the jury that these facts showed a violation of the statute, since the transaction, if made in good faith, was neither a sale nor a gift; but, the question of intent (or good faith) being involved, and the subsequent payment of money, as affecting the intention and good faith of the parties, being a question for the jury, *held,* also, that a general affirmative charge in favor of the defendant was properly refused.

3. *Same; minors relieved of disabilities of non-age.*—The statute which prohibits the sale or gift of liquors to a minor (Code, § 4038), does not contain any exception in favor of minors who have been relieved of the disabilities of infancy by a decree in chancery, nor does such decree relieve the seller from his criminal liability.

FROM the Circuit Court of Coosa.·
Tried before the Hon. JOHN MOORE.

WM. L. MARTIN, Attorney-General, for the State.

MCCLELLAN, J.—Indictment for selling or giving vinous, spirituous or malt liquors to one Smith, a minor. The evidence for the State consisted of the testimony of said Smith. He testified, that he was under the age of twenty-one years; that a short time before the finding of the indictment, he had applied to the defendant for some whiskey; that defendant told him he had no whiskey for sale, and refused to sell him any; that he then borrowed from the defendant one pint of whiskey; and that "a few days thereafter, the wagon of defendant was going to Montgomery, the market of defendant, and where he purchased his goods, and not having any whiskey on hand to return the whiskey he had borrowed from the defendant, as before stated, he handed the defendant some money, and requested him to buy as much whiskey in Montgomery as the

witness had borrowed from him, and in that way returned the whiskey he, witness, had borrowed from him." The defendant testified substantially to the same effect, in his own behalf, and in addition said, that he was a practicing physician, living at Rockford, and that he only kept whiskey to use in his practice. A decree of the Chancery Court of Coosa county, relieving Smith of the disabilities of non-age, was adduced in evidence; and defendant further testified that he had known Smith for several years, and knew he was register in chancery; that he had for five years been engaged in business on his own account, and "was a well developed, mature-looking person, and had the appearance of being twenty-one years of age."

The court, "amongst other things, charged the jury, that the disposition of the whiskey to the witness, L. R. S. Smith, as testified to by Smith, was a selling or giving, in violation of the statute;" and refused to give the general affirmative charge requested for the defendant. The action of the court in these respects is now presented for review.

The charge given by the court was, we think, erroneous. The testimony of Smith certainly tended to show, that the liquor was neither sold nor given to him, but that he received it under an agreement, and intending to replace with an equal quantity of other liquor of the same class. Upon this evidence, the jury may have found that there was no understanding between the parties, and no intention on the part of either, that Smith should at any time pay money for the whiskey, on the one hand, or, on the other, that the transaction was a voluntary transfer and delivery of it to him, without consideration. So finding, the further conclusion, that the transaction was neither a "selling" nor "giving" of the liquor, would have been matter of course, and inevitable; as, also, that the liquor was loaned, or perhaps, more accurately speaking, since it was not to be returned in specie, bartered by defendant, not without consideration, but in consideration of Smith's agreement to return a like quantity of other whiskey. These terms have each a well defined legal significance, each differing radically from both the others. A sale is defined to be a transfer of the absolute or general property in a thing, for a price in *money.* Benjamin on Sales, § 1. "Sale is a word of precise legal import, both at law and in equity. It means, at all times, a contract between parties to give and pass rights of property for money, which the buyer pays, or promises to pay to the seller, for the thing bought and sold."— *Williamson v. Berry,* 8 How. 544. "Sales include all agreements by which property is parted with for a valuable consideration, whether there be money payment or not; provided that the bargain be made, and the value meas-

[Coker v. The State.]

ured in money terms, . . . contracts of sale . . . do
not extend to bargains of barter. Where one article, or set
of goods, is intended to be exchanged for another, no price
(*pretium*) being attached, it is not a sale; for the transaction
is, in the first instance, made by an exchange of goods, with-
out reference to money payment."— *Gunter v. Lecky*, 30 Ala.
591; *Lumpkin v. Wilson*, 5 Heisk. (Tenn.) 555; *Woodford
v. Patterson*, 32 Barb. (N. Y.) 630. Where goods have been
delivered by one party, and the other party agrees to deliver
other goods of similar quality, on demand, the transaction is
not a sale of the goods, but an agreement for an exchange."
*Mitchell v. Lile*, 12 N. H. 390. "A sale is an exchange of
goods, or property, for money paid, or to be paid. *Barter*,
the exchange of one commodity, or article of property, for
another. *Exchange of goods*, a commutation, transmuta-
tion, or transfer of goods for other goods, as distinguished
from a *sale*, which is a transfer of goods for money."— *Cooper
v. State*, 37 Ark. 418; *Meyer v. Rousseau*, 47 Ark. 460.

The difference thus clearly defined between a sale and bar-
ter, or exchange, is not more essential and distinct than that
between these transactions respectively and a gift. Indeed,
the former each have one important element in common,
which is wholly lacking in the latter. Contracts both of sale
and barter involve, *ex vi terminorum*, a consideration; and
the absence of this element is of the very essence of a gift,
which is "the voluntary transfer of a thing without consider-
ation."—Schouler's Trans. Prop. 254; 8 Amer. & Eng. Encyc.
of Law, 1309. A loan, of course, differs essentially from each
of these three contracts, or transactions, and can not be cov-
ered by either of the terms "sale," "gift," or "barter." Ex-
cept with respect to money, *to loan* implies that a thing is
delivered to another for use, without reward, and to be re-
turned in specie.—*Booth v. Terrell*, 16 Ga. 25; *Nichols v.
Pearson*, 7 Pet. 109.

Nothing appears by section 4038 of the Code, which de-
nounces the offense of "giving," or "selling" liquors to
minors, to indicate that those terms were intended to have
other than their well defined and understood legal signifi-
cance, which does not embrace, or include either a barter,
or exchange, or loan. The statute is a highly penal one, and
can not be extended beyond its letter by the result, neces-
sarily more or less uncertain, of speculations into the realms
of supposed legislative intent, or the supposed evils aimed at
by the law-makers. The alleged offender must be tried upon
what the law-giving power has said, and not by what it may
be inferred, with greater or less assurance of safety, it has

intended beyond the language employed. Thus, under the Illinois statute, which, like our own, prohibits the giving or selling liquor to a minor, the indictment was for "selling" alone, and conviction was had on proof of "giving." The judgment was held bad, on the ground that the statute was penal, and could not be liberally construed; that the word "selling" had a well known legal meaning, and, in the absence of anything in the act to the contrary, must be held to have been used in that sense alone; and that the charge being of a sale, conviction could only be had on proof of a sale as that term is used in the law.—*Siegel v. People*, 106 Ill. 94. And this doctrine has been recently fully adopted by this court, COLEMAN, J., delivering the opinion of the court, and declaring that "the statute [a local prohibition act] is penal, and can not be made to embrace by construction any case not within its meaning. We have been unable to find any case where a person was convicted of selling liquor, upon proof of 'giving away' the liquor merely."— *Williams v. State, ante*, p. 14. And a like principle is recognized in the earlier case of *Young v. State*, 58 Ala. 359.

The precise question, in legal effect, we are considering, came before the Supreme Court of Arkansas, the only literal difference being, that in the Arkansas case, the barter was fully executed by delivery on either hand, while here, if that tendency of Smith's evidence to which we have been adverting was believed by the jury, the barter, or exchange, or loan, was not fully consummated at the time the whiskey was delivered to the minor; but there was the legal equivalent of such consummation, so far as differentiating the transaction from a sale or gift was concerned, in the agreement to return the defendant an equal quantity of whiskey. So that the principle applicable to the two cases is the same. Cockrill, C. J., in delivering the opinion of the Supreme Court in that case, says: "The statute makes it a penal offense for any one to 'sell, exchange, give, barter, or dispose of, any spirituous liquors or wine to an Indian' (Mansf. Dig. sec. 1879;) but, when the subject of minors is dealt with, we find that the legislature has seen fit to extend the prohibition to the single act of selling.—*Ib.*, sec. 1878. Giving liquor to a minor, or bartering, or exchanging it with him, is not within the terms of the statute. And the statute is penal, and can not be extended by the courts to cover other cases not within its terms. That would be judicial legislation. In *Ward v. State*, 45 Ark. 351, we were forced to hold, that one who gave liquor to a minor, could not be convicted of selling him the liquor under this statute. Quoting with approval *Seigel v.*

[Coker v. The State.]

*People*, 106 Ill. 89, the court there say: 'We can not construe the word "sell" in such a statute to mean something different from its ordinary legal import.' An exchange, or a barter, has a different legal import from a sale, as was pointed out by this court in *Cooper's case*, 37 Ark. 412, determined under the statute making it penal to sell, barter, or otherwise dispose of mortgaged property. See, also, *Meyer v. Rousseau, ante*, 460. Where one commodity is exchanged for another, of the same or a different kind, without agreement or reference to money payment, the transaction is not a sale, but a barter, or exchange."

These considerations and authorities leave no room to doubt, that if the transaction between defendant and Smith was characterized by good faith,—was a *bona fide* delivery of whiskey by the defendant, in consideration of Smith's agreement to replace it with other liquor of like kind—the parties having no other intention than that whiskey should be returned to defendant, no purpose that nothing should be returned, or that money should be paid directly, or indirectly; there was no selling, and no giving, within the meaning of the statute, but a barter, or loan, or exchange, which is not inhibited by the statute, and can not be punished under it. Moreover, if the original transaction was a mere barter, or loan, in good faith, involving at the time no intention to pay, or to receive money, instead of the liquor nominally agreed to be returned, its character would not be changed, so as to render it obnoxious to the statute, and infect it by relation with the element of criminality, by the fact that Smith subsequently gave defendant money out of which to buy and replace the liquor, or even, we apprehend, by the subsequent payment of money in discharge of Smith's obligation to return an equal quantity of whiskey. These facts would be for the consideration of the jury, as throwing light upon the original intention which actuated the transaction; but they could not serve to impart a criminal purpose to the original act, which did not taint it at the time it was done. The jury might have found,—there was evidence tending to that conclusion,—that the transaction, as detailed by Smith, was a *bona fide* disposition of the whiskey, which did not amount to either a selling or giving to the minor; and hence the charge which directed them to the contrary, was palpably erroneous.

What we have said is intended to apply only to the statute against the sale or gift of liquors to minors. Of course, as we have all along indicated, if what occurred was a mere makeshift to cover either a sale or a gift, the defendant could

[Nelms v. The State.]

not escape, because, on its face, the transaction bore the ear-marks of a barter, or loan. Whether the one or the other depends upon the real intention of the parties, to be inferred by the jury from all the evidence in the case. And with this factor resting in inference, the general affirmative charge could not be given on this part of the case.

Whether an acquittal, if the jury believed the evidence, should have been directed on the whole evidence, must, there-fore, depend upon the effect to be accorded to the chancellor's decree relieving Smith from the disabilities of non-age. It will suffice to say, in this connection, that the statute defining the offense of selling or giving liquor to persons of this class, contains no exception with reference to minors whose disabil-ities have been removed in the manner provided to that end. They are still minors. The removal of their civil disabilities confers upon them civil powers, and subjects them to civil liabilities, which they did not have and were not subject to before; but they are not thereby taken from under the shel-ter of the State's police regulations, enacted not only for their own, but for the protection of society. The general charge requested for the defendant was well refused.

For the error above pointed out in the charge given by the court, the judgment is reversed, and the cause remanded.