The cause stood continued for advisement; and now, at this term, *265 the opinion of the Court, (the Chief Justice excepted, who had been of counsel in the action,) was delivered as follows by
Sedgwick, J.
By the agreement of the parties, the circum stances, which took place at the trial, are not, in the view which I have taken of the case, important to be stated; as every fact necessary to a right decision of this case appears in the state of facts. which the parties have agreed upon, that the controversy between them may be finally settled upon principles of law.
* The demandant count's on the seisin of his father, [ * 299 ] Archibald M’Neil, his death, that he is his son and heir, and that the title to the demanded premises descended to him.
On the part of the tenants, it is agreed that Archibald M'Neil, the father, became legally seised in fee of the demanded premises in 1753, and continued so seised until March, 1776; that the demandant is his son, and one of his heirs, as set forth in the count. To stop here, the right of the demandant to recover would be indisputable.
On the part of the demandant, it is agreed that in March, 1776, Archibald M’Neil became an absentee, as described in the act of the 30th of April, 1779; that he never afterwards returned into this state, or into any other of the United States, until after the treaty of peace between the United States and the king of Great Britain; and that he never was, in fact, afterwards an inhabitant of, or resident within, Massachusetts, or any other of the United States, nor ever after he left the country, in the possession of the demanded premises.
It is further agreed that Andrew Black, being duly appointed by the judge of probate, in pursuance of, and in conformity to, the act of 1777, to prevent waste, &c., of the goods or estate of absentees, and for the payment of their just debts, entered into, and took possession of, the demanded premises, as estate left by Archibald M’Neil; and being so in possession, leased the same to Samuel Conant, who, by virtue thereof, continued in possession until the 7th day of September, 1782; that on the day last mentioned, Samuel Henshaw and Samuel Barrett, two of a joint committee of three, appointed by a resolve of the legislature, to sell the estates of conspirators and absentees lying in the county of Suffolk, contracted to sell the same to the said Samuel Conant, and thereupon made, on the same day, a conveyance thereof to him in fee ; that the tenants derive a title from Conant to themselves by several mean conveyances, and that the actual possession has ever been in conformity thereto; that at the Supreme Judicial Court holden at Boston, in the county of Suffolk, which commenced on the 19th day of November, 1782, and continued in session unti. *266 the 7th day of the ensuing December, a regular judg* [*300] ment was rendered *that the demanded premises did, conformably to the act of the 30th of April, 1779, escheat, enure, and accrue, to the government. This judgment has not been reversed; but no writ of possession was ever issued upon it.
The provisional treaty, which is submitted to, and if it was not, it would be the subject of, the consideration of the Court, was signed by the respective plenipotentiaries of the United States and Great Britain on the 30th of November, 1782; by the sixth article of which it was agreed that there should be “ no future confiscations.”
It appears by the agreement that the demandant was born on the I5th of August, 1764; that in March, 1776, being the 12th year of his age, he went with his father, and that he continued with him until his death in July, 1784, that is, until after the ratification of the definitive treaty of peace; and that the demandant did not return to the United States until the year 1789.
There are several facts stated in the agreement, which I have omitted, because they have no influence on the judgment which I shall pronounce.
There are two circumstances, upon which the counsel for the tenants rely.
1. The judgment of the Supreme Court in November, 1782, whereby the demanded premises, conformably to an unrepealed law, were adjudged to escheat, enure, and accrue, to the government of the state. And
2. That the demandant is an alien, and has not a right to support a claim, in a court of justice, for an estate of inheritance.
As to the judgment, there cannot be a doubt but that it must be conclusive against the demandant, provided the objections, which are stated against it, do not prevail.
The first objection against it is, that it was incomplete until it was executed by a writ of possession.
That a man, who has a judgment for possession, may enter without a writ, is common learning, and indeed is not denied. And why should the commonwealth, which cannot be disseised, the whole people, require the aid of an officer to give them actual possession, when it is not necessary in the case of an indi[*301 ] vidual? The highest evidence of title, that *can exist, is the solemn judgment of a court. When, then, this judgment says that the demanded premises, which were the property of Archibald Ml Neil, have been forfeited by him, and have es-cheated, enured, and accrued, to the government, — if this be not *267 evidence that his title was transferred to the government, we must abandon the idea of the absolute verity of judgments.
When the finding of an office is necessary to give validity to a forfeiture, no other act is necessary; as in the case of an alien. He may purchase and hold until office found, and no longer; (8) for thereby the property vests in the government. And so it is, also, in other cases of forfeiture. (9) Now, the judgment in this case must be at least equal to finding an office.
But it is said that the necessity of a writ of habere facias possessionem, to give validity to a judgment, and to put the government in possession, is apparent from this consideration, that the conspirator’s act, which passed on the same day that the absentee act did, declares that the government shall “ be taken, deemed, and adjudged, to be in the real and actual possession of their estate, any thing in the act for confiscating the estate of certain persons commonly called absentees, or any other law, notwithstanding; ” while in the latter act the Court is directed, when judgment shall be given against an absentee, to issue a writ of habere facias possessionem.
I can easily perceive a difference as to the expediency of issuing a writ of possession in the case of an absentee, and omitting to do it in the case of a conspirator. In the former case, one in possession of the estate of an absentee might have no knowledge of a judgment against him; but in the latter, the right of the government was declared by a public law which might be reasonably presumed to be known to every one. In the one case, therefore, it might be convenient that a writ of possession should be issued; while in the other it would be wholly unnecessary and superfluous.
But it is impossible for me to believe that the legislature deliberately intended so to alter the principles of the common law, as to determine that, when the title of the government * was established by a solemn judgment, although there [ * 302 ] could be no opposing of possession, (for the government cannot be disseised,) yet that a writ of possession was necessary to complete the title. If it had been intended, in fact, to deny to the government the exercise of their right to enter into their property, an explicit declaration to that effect, it is reasonable to suppose, would have been, by negative words, inserted in the act.
It is, therefore, our opinion that the issuing of a writ of possession, on such a judgment, was intended as merely mandatory, and not necessary to complete the absolute title of the government.
A further objection is made to this judgment., that, although the term of the court, at which it was rendered, commenced before the *268 date of the provisional treaty of peace, yet it is probable that the judgment was rendered afterwards; and that, in that case, the confiscation law being virtually repealed, there was no foundation on which to rest the judgment.
The provisional treaty was never, I believe, ratified by either the American or the British government; and whether it is of itself a contract binding on the two countries from the date, or at all; or whether it was intended merely as a specification of what should constitute the definitive treaty of peace, and, when inserted therein, was functus officio, and otherwise inoperative, I give no opinion; but, whatever may be the construction in this regard, I cannot entertain a doubt that the judgment, so long as it remains unreversed, is, to all intents and purposes, valid and effectual.
This judgment, as presented to us, is in form perfectly regular. It purports to have been rendered, on a statute of the government, by a court which not only had jurisdiction expressly given by the statute, but jurisdiction paramount to any other court. And the judgment, on the face of it, appears to have been rendered previous to the date of the treaty, by which it is said to have been rendered void; and it has not been reversed by a court of law. The judgment appears to have been rendered on the nineteenth day of November, 1782, and the provisional treaty was dated the thirtieth [ * 303 ] day of the same month. But it is said that, although * the judgment was rendered by the court holden on the 19th day of November, yet it continued to be holden until after the date of the provisional treaty; and that the judgment was, in fact, rendered posterior to that date. And it is further said that, but for the misdirection of the judge, that fact would have been established on the trial.
But we are of opinion that it was not competent to the demand-ant, by such means, to prove the invalidity of the judgment, or that it was void. The tenants produce the judgment of a court of record, as evidence of a fact on which they rely; and at the same time show a statute authorizing that court to render such a judgment. In answer whereto, the demandant says, that he can prove that the statute was repealed at the time the judgment was rendered ; not by the legislature which enacted it, but virtually by a national trea ty ; and not expressly by that, but by necessary implication.
First, then, to obtain the object, an issue of fact is to be tried, to prove that the judgment was not rendered, when it purports to have been ; and if the demandant should be successful in that, the Court is then to proceed to determine that the statute, at the time the judgment was in truth rendered, has been virtually repealed by the *269 treaty. There is no precedent, whereby the force and effect of a judgment have, by such mode, been avoided.
If it be true that the provisional treaty is to be considered as a national contract, binding independent of the definitive treaty ; that it operated a repeal of acts of confiscation ; and that the judgment against Archibald M'Neil was, in truth, rendered after the date of that treaty ; the demandant should have brought his writ of error, established the fact, and the judgment must have been reversed. But I know of no rule of law, by which, on a trial of his right to the land, he can do what is tantamount to a reversal of the judgment, which, admitting its validity, is conclusive against him. There are, it is true, instances in which judgments of court are void, and may be so considered, without reversal; but it is'Only in cases, where, from the judgment itself it is apparent that the court had not any jurisdiction, but had exercised that which belonged to another tribunal. But in this case there *are no cir- [* 304] cumstances by which that principle can be applied.
There is one more objection made, which is, that the acts of con fiscation were virtually repealed by the adoption of the constitution. And to prove this, the 24th article of the declaration of rights was cited in the argument, and, with great force and eloquence, pressed upon the consideration of the court. That article is in these words: “Laws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the principles of a free government.” It is said that the absentee act was made to punish for actions done before its existence, which had not been declared crimes by preceding laws, and that it is therefore unjust, oppressive, and inconsistent with the fundamental principles of a free government; that those who framed the constitution having declared the law in question to be unjust, oppressive, and hostile to liberty, and the whole people, by their adoption of it, having sanctioned and confirmed this declaration, it operates a virtual repeal; and that it would be absurd, that a law, so opposed to the principles of the constitution, and so pregnant with evil, should be carried into effect by judicial authority.
If it be admitted that the constitution virtually repeals the law in question, it certainly follows that the judgment against Archibald, M’Neil is erroneous, and that it might be reversed; but it does not prove that it is therefore a mere nullity, which can be taken advantage of in this way. This would be inconsistent with all the ideas I have entertained of the solemnity and efficacy of judgments rendered by courts of competent jurisdiction.
But I do not believe that the constitution did, as the demandant’s *270 counsel suppose, virtually repeal the confiscating acts. Whethei these acts were intended to punish those who were the subjects of them, or whether they were political regulations, growing out of the circumstances of the times, and supposed to be authorized by those circumstances, need not now be determined. The restraint which was intended upon the powers of the legislature, by this [ * 305 ] article of the declaration * of rights, could not, I am perfectly satisfied, operate to repeal those laws; but was intended to direct the conduct of the legislature acting under the constitution. The constitution must be construed according to the intention of those who framed, and those who ratified it; and I believe I may safely affirm, that it never entered into the mind of an individual, at the time, that conspirators and absentees were to derive from the constitution an exemption from the pains and forfeitures which had been prescribed against them.
As we think the judgment, in this case, is conclusive against the right of the demandant, it has become unnecessary to proceed and consider, whether, by the facts disclosed, it appears that he is an alien, or whether, if so, his alienage might have been pleaded in bar, or given in evidence under the general issue. Upon these points we give no opinion. Being satisfied that the judgment of the court is in force, and that, so long as it continues in force, it is conclusive evidence against the right claimed by the demandant; he is not by law authorized to disturb the possession of the tenants, whether that possession, in its original commencement, was attended by a lawful title or not. Judgment must be entered, for the tenants.

 Co. Lit. 2, b.

 Plowd. 229, 230. 484. — 3 Rep. 10.