Isaac Mansfield & al. versus Alden Jack.

It is a part of the duty of officers, employed in the levying of executions, before proceeding to levy upon an undivided portion of the estate of the debtor, to ascertain whether it presents a case, in which the setting off of a portion of it by metes and bounds will be prejudicial to, or spoil the whole. If he should persist in setting it off in severalty, when by so doing, he would injure the whole, he might subject himself to an action, as for a misfeasance; and the like would be the case, if he should unreasonably persist in setting it off in undivided portions, when it could with propriety be set off in severalty.

The return of an officer, that the land, upon which an execution is to be levied, " cannot be divided without prejudice to, or spoiling the whole," is conclusive of the fact, as between the creditor and debtor, and those claiming under them; and can be controverted only in an action against the officer, or his principal, for misfeasance.

And it would seem, that an execution may be legally levied upon an undivided portion of any lands, or buildings of the debtor, where the officer will certify, that it " cannot be divided without prejudice to, or spoiling the whole," if its value is more than sufficient to satisfy the execution.

Writ of entry. The demanded premises were once the property of Jeremiah Potter, and both parties claimed under him. On March 27th, 1837, the demandants attached the land, entered their action, obtained judgment, and within thirty days thereafter levied their execution on the same. The statement of facts agreed on by the parties says, "it is agreed, that the levy was in all respects regular and valid, unless rendered inoperative by reason of the appraisers having set off a fractional part of the entire estate, instead of dividing the same by metes and bounds, and setting off the plaintiffs' portion in severalty." The certificate of the appraisers, and the officer's return, were referred to as part of the case; and no other facts appeared in the statement in relation to the land or to the levy. The certificate of the appraisers says, that they "entered and viewed the real estate hereinafter described; to wit. One saw and gristmill, with the privileges and appurtenances thereto belonging," particularly described by metes and bounds. "Also, one other piece of land for a passageway from said mill lot above described," bounding out a one rod road. "Also another piece of land with the buildings thereon, bounded, beginning

on the south side of the road last mentioned at the northeast corner of land owned by John Randall, thence running southerly on said Randall's line to the mill lot above described, thence easterly on said mill lot to land occupied by Joseph Wharff, jr., thence northerly by said Wharff's land to said road, thence to the point of beginning, subject, however, to the right of way above described, in connection with said mill lot; and we have on our oaths aforesaid appraised one hundred and eighty-eight undivided two hundred and fiftieth parts of said mill lot and passageway at the sum of $188, in part satisfaction of this execution; and we have also appraised one hundred and thirty-nine six hundred and seventy-fifth parts of the land and buildings last above described at the sum of $138,57, in satisfaction of the remainder of this execution and all fees. All the above described estate being so situated, that it cannot in our judgment be divided by metes and bounds without injury thereto."

The officer's return, after refering to the return of the appraisers, states, "and it not being practicable to divide either parcel of said real estate without prejudice to the whole, and the said mills, mill lot, and passageway not being sufficient to satisfy said execution, and the whole of the other parcel of real estate not being necessary for the satisfying of this execution, I have extended said execution on 168 undivided 250th parts of said mill, mill lot and passageway, and on 139 undivided 675th parts of the land and buildings in said appraisers' return described."

The defendant claimed under a purchaser from said Potter, by deed dated on March 29, 1837, two days subsequent to the attachment on the writ of the plaintiffs.

The land demanded was the tract last described in the certificate of the appraisers.

*H. W. Paine*, for the demandant, contended that the levy upon an undivided share of the estate was legal. It is the province of the appraisers to determine, whether the property upon which the levy is to be made, is of such character and

condition, as to require the setting off of the land to be of a specific portion thereof by metes and bounds, or of an undivided portion thereof. And where there is no fraud, their decision is conclusive on the subject. *Atkins* v. *Bean*, 14 Mass. R. 404 ; *Hilton* v. *Hanson*, 18 Maine R. 397.

*Whitmore*, for the tenant, said that this levy was made under the statute of 1821, c. 60. The general rule is found in § 27, and requires that the land set off shall be the whole or some entire portion of the estate, by metes and bounds, and not an undivided portion thereof, where the debtor, as in this case, was the owner of the whole estate. The 28th section applies only to setting off rents and profits for a term of time. The only exception, permitting the setting off of an undivided share, when the debtor owns the whole, is found in § 29. That applies merely to mills, and to other property of the same character as mills, where no part of it can be used without the use of the whole. If this be legal, then all real estate may be set off in undivided portions, instead of by metes and bounds ; for it is always an injury to the whole to divide it, in such manner as to pay a debt of a particular amount without the power to divide to the best advantage. Setting off an undivided share does not cure the difficulty, but merely postpones it, and increases the expense ; for the same will arise on the partition. He believed the construction contended for on the part of the tenant, had been the practical one ever since the first enactment of the statute in Massachusetts. He said, that appearing, as he did, only for a professional gentleman residing in another county, he had not had time to examine the decisions ; and would therefore merely refer to the case cited for the demandant, *Hilton* v. *Hanson*, 18 Maine R. 397.

The opinion of a majority of the Court, SHEPLEY J. remarking, that he dissented both from the reasoning and the result of the opinion of his associates, was drawn up by

WHITMAN C. J. — The claim of the plaintiffs arises under a levy upon real estate ; and their title depends upon the va-

lidity of it. Two several parcels of land appear to have been seized, and set off in satisfaction of an execution, obtained by the plaintiffs against one Potter; who, after the same had been attached on the original writ in the plaintiffs' action against him, conveyed the same to one, who thereafter conveyed it to the defendant. One of the parcels of land consisted of a mill lot, of which one hundred and eighty-eight two hundred fiftieth parts were set off, with a right of way, over the other parcel, in common and undivided. The other parcel seems, by the boundaries, to have been contiguous to the mill lot, consisting of land and buildings, of which one hundred and thirty-nine six hundred and seventy-fifth parts, in common and undivided, were set off. It is understood, though the statement of facts does not expressly show it, that the present controversy is in reference to the latter parcel. The defendant, as to this, contends, that the levy was void, as it was upon an undivided portion, when, as he contends, it should have been upon a *distinct* and severed part thereof by metes and bounds.

By the statute of 1821, ch. 60, § 29, executions might be levied "on an undivided portion of any sawmill, gristmill or other mill, factory, mill privilege, or other real estate, which cannot be divided without prejudice to or spoiling the whole," the whole not being necessary to satisfy any such execution. It is manifest, that the other real estate to be set off in common, in the clause above quoted, should be *ejusdem generis* with mills, &c. as to the impracticability of occupying it profitably, if set off in several parts. The appraisers, in reference to the levy in question, have certified, as to both parcels, that, in their judgment, they could not be " divided by metes and bounds, without injury thereto." And the officer who levied the execution, returns, that he had levied upon the undivided portions, " it not being practicable to divide either parcel of said real estate without prejudice to the whole." It is undoubtedly a part of the duty of officers, employed in the levying of executions, before proceeding to levy upon an undivided portion of the estate of the debtor, to ascertain whether it presents a case, in which the setting off of a portion of it, by metes and

bounds, will be prejudicial to, or spoil the whole. If he should persist in setting it off in severalty, when by so doing he would injure the whole, he might subject himself to an action, as for a misfeasance; and the like would be the case, if he should unreasonably persist in setting it off in undivided portions, when it could with propriety be set off in severalty. The officer in such cases must act at his peril. Must not his decision and return, so far as it affects the title, whether in one or the other of these cases, be deemed conclusive? And is there any other resource, in such cases, for the party feeling himself aggrieved, for his redress, than to an action of the case against the officer for a misfeasance? Generally the truth of an officer's return, in reference to duties enjoined upon him by law, cannot be controverted, except in an action against himself, or where strangers are concerned. The appraisers are to be freeholders. His return, that they were so, would be conclusive. *Boston* v. *Tileston,* 11 Mass. R. 468. Mr. C. J. Sewall, in *Bott* v. *Burnel, ib.* 163, says, in reference to a levy, "The sheriff's return is conclusive as to the formal preceedings by the appraisers and himself;" and that "The effect of these proceedings, between the creditor and debtor in the execution, is to be determined by the sheriff's return, which is not to be supplied or contradicted;" and the same is the case, without doubt, with all such as claim in privity of estate under a debtor or creditor.

In what cases a setting off of real estate in severalty would be prejudicial, and to what degree it would be so, must necessarily be a question attended with difficulty, in many, if not in most of the cases which may occur. The law is silent upon the subject. In order to the validity of a levy upon a portion of an estate to be held in common, a decision as to its necessity or propriety must be made, in the first instance, by some one; and by whom shall it be made? No one, but the officer, can make a return of the fact, that it will be prejudicial to do otherwise; and this he must do as of his own knowledge. He then must be the person to make the decision. Suppose he should err, it might be in some slight degree, and perhaps in

an instance in which but a majority of minds would judge differently, would the title be invalidated for such cause? If not, how great must the error be to authorize a Court to adjudge the levy to be void? It will certainly be difficult, as matter of law, to prescribe any limits for the guidance of an officer in such cases. In case of collusion between him and the creditor, and a manifest departure from the line of duty, might be evidence of it, especially if followed by indications of a disposition to oppress the debtor, in determining to levy upon an undivided portion, instead of a set-off of a part in severalty. It may be, that it should be allowable, for such cause, to question the title of a creditor. But so long as nothing of that kind appears, or can be presumed, it can scarcely be deemed reasonable, that the title of the creditor should be affected by a levy made under the circumstances attending the one in question.

In this case the parties have put it to the Court to determine, whether the levy is invalid for the cause assigned or not. If it be a question proper for us to decide, what are the data upon which we are to predicate a decision? We are referred to the adjudication of the appraisers, and to the return of the officer, who made the levy, for the facts. From these we gather, that the parcel of real estate in question consisted of land, the metes and bounds of which are given, and of buildings thereon, but of what kind does not appear. It adjoined the mill lot; and a right of way is reserved to run through it to that lot. This is the whole of the description. How can we determine that any portion of it could have been advantageously set off in severalty? To have set off the buildings, without the contiguous land, might have been ruinous to the value of each. The buildings, besides, may not have been susceptible of an advantageous division. It may be, that they consisted of a store and appurtenances, separate portions of which could not have been occupied by different individuals. In making partition of real estate it is often found, that very different allotments must be made, in order that the value of it may not be impaired. A valuable tavern stand or hotel, for instance,

in a process of partition, could not be allotted in separate portions to a number of individuals, without materially impairing the value of the whole. Hence provision is made by statute, in such cases, for such unequal allotments; and for compensation in money by those having the larger allotments, to those to whom smaller portions are assigned. We cannot, therefore, be sure, if it were competent for us to make the inquiry, that the levy, in this instance, on an undivided portion, was not such as was called for by imperious necessity. The plaintiffs, therefore, must have judgment for possession of the demanded premises.