# COÖS,

## DECEMBER TERM, A. D. 1856.

## LYFORD *v.* DUNN & *a.*

32    81
69    179

Where a defendant dies pending a suit, and his administrator comes in and defends, and the estate is afterwards decreed to be administered as insolvent, but the administrator continues to defend the action without any plea or suggestion of the insolvency, and a regular judgment is rendered against him, if execution issue and is levied on one undivided share of the land of the deceased, the levy gives the plaintiff seizin, and title sufficient to maintain a petition for partition against a stranger in possession of the other undivided shares.

If, pending a suit for the recovery of a debt, the debt and suit are assigned, and the assignment put on file in the action, the assignee is to be regarded as the creditor, to whom the execution is to be paid and satisfied, and levy of the execution and delivery of seizin are properly made to him.

PETITION FOR PARTITION, and a trial of issues framed in the Superior Court. A verdict was taken for the plaintiff, subject to be set aside, and verdict and judgment entered for the defendants, or such other order made in the matter as the court might determine upon the following facts:

In 1835 Andrew Gilman owned lots 11, 12, 13, 14 and 15, in the 13th range, in the town of Carroll. Charles Woodman, having a judgment against Gilman, sued it, and on the 17th of November, 1846, attached those lots. The action was entered at the February term of the Court of Common Pleas, Belknap County, 1847, and Gilman was defaulted, and the action continued to September term, 1847, when the death of Gilman was

suggested, and the action continued to February term, 1848, at which term J. H. Hobbs, administrator of Gilman, appeared, and the action was further continued to September term, 1848. On the 10th of September, 1848, Woodman duly assigned his judgment to the plaintiff, and the assignment was put on file in the action. The action was continued to September term, 1851, and then judgment was rendered against Hobbs, as administrator, for the debt and costs, and execution was issued on the 12th of September, 1851, against Hobbs as administrator " for the goods and estate of said Gilman, in said Hobbs's hands, and attached on the writ in this suit ;" and the officer was ordered " to cause the same to be levied and paid to said Stephen C. Lyford, the assignee of said judgment."

On the 2d of October, 1851, the execution was duly levied " upon an undivided one eighth of each of said lots, and set off the same to said Lyford, in satisfaction thereof." All the lots were contiguous and adjoining each other.

The defendants objected to the regularity and validity of the execution and levy, and contended that an undivided eighth of all the lots as a whole should have been set off, and to Woodman instead of the plaintiff.

It was in evidence that Woodman was in possession of the lots in the autumn of 1846.

The defendants then proved that upon the petition of Hobbs as administrator, it was duly decreed by the court of probate on the first day of January, 1850, that the estate of Gilman should be administered as an insolvent estate, and a commissioner appointed.

The defendants also introduced the records of Carroll, to shew a sale of said undivided one eighth of said lots, for the non-resident taxes of 1840. The town clerk, by leave of court, made sundry amendments, not necessary to be stated here.

The list and advertisement of non-resident taxes for that year contained a long column of other lots, together with those in dispute, which last were near the bottom, and directly in the line of the others ; on the left of those at the top were the words, " seven eighths owned by R. B. Dunn, seven eighths paid."

The plaintiff objected to the sale, because the collector returned that he offered for sale " one eighth of lots No. 11, 12, 13, 14 and 15, and was struck off for the town for the whole, he being the highest and only bidder for the same."

The defendants further introduced the records of Carroll for the year 1849, and other evidence, to prove a sale for the taxes of that year, and the town clerk was permitted to make sundry amendments of his records. The collector returned that he set up " three eighths of the lots in dispute, five eighths of the taxes having been paid, which were struck off to E. Dunn for R. B. Dunn for the whole, he being the only and the highest bidder," to which the plaintiff objected. The plaintiff made numerous other objections to these tax titles.

*Lyford*, for the plaintiff.

*H. A. Bellows*, for the defendants.

PERLEY, C. J. The Revised Statutes, chapter 161, section 8, provide that no action shall be commenced or prosecuted against an administrator, when the estate is decreed to be administered as an insolvent estate; and by section 31, of chapter 184, it is enacted that attachments shall be dissolved by the death of the defendant, in case his estate shall be decreed to be administered as an insolvent estate, but not otherwise, if the cause of action by law survives.

After the death of Gilman, his administrator, at February term, 1848, came in and assumed the defence of the action, and continued to defend until judgment was rendered against him, at September term, 1851. On the first of January, 1850, the estate was decreed to be administered as an insolvent estate. If the administrator had taken advantage of this decree by plea or suggestion, the suit could not have been further prosecuted, but must have abated. No such objection appears to have been made, and the record shews regular proceedings, a regular judgment, and an award of execution against the goods and estate of the deceased in the hands of the administrator.

The same statute, which provides that no action shall be commenced or prosecuted when an estate has been decreed to be administered as insolvent, also provides that no action shall be sustained against an administrator, if commenced within one year, or more than three years, from the grant of administration, or unless a demand has been exhibited within two years. In all these cases the administrator may protect himself and the estate, by interposing the objection in the proper time and manner. But if he allows the suit to proceed without objection, and judgment to be rendered against him, the judgment stands as valid until reversed, or otherwise annulled and vacated. We think the judgment in this case must be governed by the same rule. The court had jurisdiction of the cause and the parties; the proceedings are neither irregular or erroneous, and the judgment cannot be impeached collaterally by merely introducing the decree of another tribunal that might have been shewn to abate the action in which the judgment was recovered. *McNeil* v. *Bright*, 4 Mass. 282; *Loring* v. *Bridge*, 9 Mass. 124; *Hoyt* v. *Geltron*, 13 Johns. 153; *Bannister* v. *Higginson*, 15 Maine 73; *Hammond* v. *Wilder*, 25 Vermont 242; *Smith* v. *Knowlton*, 11 N. H. 191. The lands of the deceased in the hands of his administrator were liable to be taken in execution to satisfy the judgment. *Mead* v. *Harvey*, 2 N. H. 341.

Where an estate is administered as insolvent, the administrator has a claim on the lands for the payment of the debts; he enters into possession to take the rents and profits, and, by license from the judge of probate, he may sell for the purpose of satisfying the debts. Compiled Statutes 407, § 10.

But the general property in the lands is not in the administrator; they belong to the estate, and are part of the estate of the deceased in his hands. Whether this estate was in fact insolvent, and these lands necessary for the payment of debts, the case does not shew, and it would not seem to be material until some claim is made by, or in behalf of the creditors. The lands, at any rate, were part of the estate of the deceased in the hands of the administrator.

The plaintiff had a regular judgment against the administrator of Gilman. By the general rule of law, he was entitled to have his execution extended on the lands of the intestate in the hands of the administrator; execution was awarded accordingly, and levied on the lands of the deceased; no claim to the lands has been interposed by the creditors, or the administrator in their behalf; and as to these defendants, we think the levy, and the possession given by the officer under it, constitute a sufficient title and seizin to entitle the plaintiff to partition on this petition. *Gore* v. *Brazier*, 3 Mass. 523 ; *Bartlett* v. *Perkins*, 13 Maine 90.

It is not necessary now to inquire whether the seizin and title of the plaintiff, derived under this judgment and levy, might not be divested so as to satisfy the claims of creditors allowed by the commissioner. The question on this case is between the judgment creditor, claiming under his judgment and levy, and the defendants, who have no claim to the estate, as creditors or otherwise.

It is objected that the levy is void, because it was made to the assignee, and not to the nominal plaintiff, in whose name the suit was prosecuted. There is no suggestion that the assignment was not valid, and it was put on file in the suit.

Our statute on this subject uses the word " creditor," and not the word " plaintiff." The land is set off to the *creditor;* the *creditor* appoints one of the appraisers, &c. Compiled Statutes 500, § 1, 2, 6, 10, 11, 13 and 14. Was the assignee of this judgment the *creditor*, within the meaning of the statute ?

The equitable interest of an assignee is protected by courts of law. If Woodman, after the assignment, had attempted to control this suit, he would not have been permitted to do it; and his discharge could not have been regarded at law. The officer in the service of the execution would be bound to follow the instructions of the assignee, and if he had notice of the assignment, could not protect himself under the orders of the assignor. *Martin* v. *Hawks*, 15 Johns. 405 ; *State* v. *Herod*, 6 Blackford 444 ; *Colburn* v. *Rossiter*, 2 Conn. 503; *Baker* v. *Davis*, 2 Foster 27.

It would be in direct conflict with these well recognized rights of the assignee, to hold that he was not the creditor, within the meaning of the statute, and the proper party to appoint the appraiser and receive seizin under the levy. We think the levy was properly made, and this we understand to be in accordance with the decision in *Rangely* v. *Goodwin*, Carroll, July, 1844, not yet reported.

The several tracts levied on were contiguous, and if an undivided eighth part of the whole tract had been set off on the execution, the creditor would have been seized of an undivided eighth in the whole and in every part; that is to say, of an undivided eighth in each lot. That is exactly what he takes under this levy. So under the levy he takes an undivided eighth in each lot, and that gives him an undivided eighth in the whole tract; and the whole being appraised together, it is in effect exactly the same thing as if an undivided eighth had been set off in the whole by that description. The title is the same, the appraisement is the same, and the right of redemption is the same, as if an eighth had been set off in the whole. It is no more than a different description of precisely the same thing. This objection to the form of the levy cannot prevail.

The judgment of the appraisers as to the expediency of setting off an undivided share, is conclusive, but we do not understand that any objection was made on that account; and it is, perhaps, to be inferred from the case, though not distinctly stated, that at the time of the levy no more than one undivided eighth belonged to the estate. Comp. Statutes 510, § 8; *Mansfield* v. *Jack*, 24 Maine 98.

In the sale for the taxes of 1840, the collector returns that he offered for sale one eighth of the lots, " and was struck off to Jonas Howe for the whole."

In the sale for the tax of 1849, the collector returned that he " set up three eighths of the lots, which were struck off to E. Dunn for the whole."

The lists and advertisements shew that in both cases all the land for which the taxes remained unpaid was set up and offered

Lyford *v.* Dunn.

for sale.    We are not able to distinguish this case from *Ains-
worth* v. *Dean*, 1 Foster 400, in which it was decided that
where, in a sale of land for non-resident taxes, an entire lot is
offered for sale, and is sold, the sale is void.

*Judgment that partition be made.*