SAMUEL L. CUTTER *vs.* CITY OF CAMBRIDGE.

A petition for the alteration of a highway which had been laid out fifty feet wide prayed that it might be narrowed by taking ten feet from the easterly side, leaving the boundary line on that side along the wall of a building which the petitioner had erected there, in ignorance of the laying out of the highway. A committee appointed for that purpose reported that they had altered the highway according to the prayer of the petition, by setting off ten feet from the easterly side of the highway, leaving the highway forty feet wide, and bounded on the westerly side according to the original laying out, and on the easterly side by the building of the petitioner. This report was accepted. *Held*, that this was not a new laying out of the highway so as to take in more land upon the westerly side of it, although the westerly boundary, as it then stood, was a little less than thirty-nine feet from the building of the petitioner.

Maintaining a fence within the limits of a highway for forty years, under a claim of right, gives to the owner an absolute right, under the statutes of this commonwealth, to continue it there, as against the public.

HOAR, J. This was an action of tort for breaking and entering the plaintiff's close, and removing his fence. The defendants justified the acts charged on the ground that the fence was within the limits of a highway. The original laying out of the highway was in 1804. The boundary given at the place in controversy was as follows: " Beginning at the road leading from West Boston Bridge to Cambridge at a stake and stones in Elijah Whitney's land fifty feet easterly of Mr. Grant's house lot, thence running No. Easterly through said Whitney's land to a stake and stones by a private way " — " the bounds being on the easterly side of the road, and the road being fifty feet wide the whole length of said road."

In the year 1818 Thomas Dowse petitioned the court of sessions for an alteration of the road by taking ten feet in width from the easterly side thereof. His petition represented that for a distance of two hundred and ninety-eight feet from the point of beginning of the road laid out in 1804, there had been previously to that laying out an open street of forty feet wide, laid out and made by the owners of the land adjoining; that Elijah Whitney, whose land on the east side of said road was taken by the increased width of the new location, was not aware of the fact; that the fences were not removed, and the said

Whitney continued to occupy his land until he sold it to the petitioner, who had erected an expensive building with a walled cellar, coming up to the line of the former street, in ignorance that he was encroaching on the public right; and prayed that the road might be altered and narrowed for the distance aforesaid by taking ten feet from the easterly side, leaving the road as it had always been used and improved forty feet wide. Upon this petition, in 1819, a committee appointed by the court of sessions reported in these words: " We have altered the same according to the prayer of said petition and the order of court thereupon as follows, viz : we have set off ten feet in width from the easterly side of said highway leading, &c., leaving said highway forty feet wide, and bounded on the westerly side according to the original laying out by the lots of Abraham Grant and the heirs of Charles Park, and on the easterly side by the buildings and fences of the petitioner, Thomas Dowse, as they now stand ; " and their report was accepted.

It appeared at the trial that the fence which the defendants removed stood a little less than thirty-nine feet west of the westerly line of the building of said Dowse, and that said building had remained unaltered. The fence was removed within forty years of the action of the court in 1819.

The defendants requested the court to instruct the jury, " 1st, that the laying out of said Prospect Street by the court of sessions in 1819, upon the petition of Thomas Dowse, shown by the records in the case, was a new laying out of that street ; and although the fence, when removed by the defendants, had been continued for forty years, if it was within the boundaries of the street as there established, the defendants were justified in removing it, if they did so within forty years from the time said street was so laid out." The court refused this instruction, and ruled that the laying out in 1819 amounted only to a discontinuance of ten feet of the width of said street on the easterly side thereof; to which ruling the defendants except.

We think the ruling was substantially correct. The petition asked for no alteration on the west side of the street, and the return of the committee does not show that any was intended.

On the contrary, it expressly recognizes the line of the lots on the west side, according to the original laying out, as the westerly line to be continued. The petition avers that the fences had not been removed since 1804. If, therefore, the fence of the plaintiff has been continued in the same place, and that was on the line as originally laid out, " by the lots of Abraham Grant and the heirs of Charles Park," it was on the true line of the original location. The averments of the petition are not to be considered as facts established by the record; nor, strictly speaking, should the facts narrated in the report of the committee, except so far as they are descriptive of what was actually done by them. When the committee say that they have set off ten feet in width on the easterly side, and have left a road forty feet wide, bounded on the easterly side by the building of Dowse, and on the westerly side by the west line of the original location, if it should turn out that there were less than thirty-nine feet between those monuments, it would not be an appropriation of any new land on the west side to public use, but would only show that they and Mr. Dowse had been mistaken in the precise number of feet by which his building had encroached upon the road. This supposition does not seem improbable, as the original stake and stones on the easterly side, which was the monument, would of course have been obliterated by the erection of the building. If that were the case, it would present an ordinary case of discrepancy between the monuments and the measurements called for by the location, in which the monuments would govern.

The fifth instruction asked involved the same question in another form, and was rightly refused for the same reason.

The court instructed the jury, secondly, " that although the boundaries of Prospect Street were made certain by monuments or records, and the fence stood within said boundaries, if it had stood forty years, the plaintiff had an absolute right to continue it there." The exception to this instruction presents a question upon the construction of Rev. Sts. c. 24, § 61, which were substantially a reënactment of St. 1786, c. 67, § 7, and provide that " where buildings or fences have been erected and continued

for more than twenty years, fronting upon or against any training field, burying place, common landing place, highway, &c., and from length of time or otherwise the boundaries thereof are not known, or cannot be made certain by the records or by any monuments, such fences or buildings shall be deemed and taken to be the true boundaries thereof; but when such boundaries can be made certain, no length of time, less than forty years, shall justify the continuance of a fence or building on any town or private way, or on any highway, &c., but the same may, upon the presentment of a grand jury, be removed as a nuisance." Gen. Sts. *c.* 46, § 1. The only material difference between the *St.* of 1786 and the Revised Statutes is, that in the former the limitation was forty years in the first clause, and sixty years in the second, instead of twenty and forty years respectively. The second clause seems to have been new in the *St.* of 1786; though a similar provision to the other, that, where the boundaries could not be ascertained, fences which had stood for thirty years should be taken to be the boundaries of highways, is found in the provincial statute of 7 Geo. II. Anc. Chart. 494, 495.

The language of the second clause of Rev. Sts. *c.* 24, § 61, is certainly peculiar, and no case is brought to our notice in which it has ever received a judicial construction. The defendants contend that it was not intended to provide any limitation in favor of individuals against the public, but was only meant to fix a time within which a jury should not be allowed to act upon the presumption arising from lapse of time as a matter of evidence.

It is true that at common law no length of time would create an adverse right against the crown or government. And in England, to allow the presumption of a lost grant has been the only way in which the courts could avoid the effect of the absurd limit of legal prescription. But in this commonwealth the time of legal memory has been fixed at sixty years. *Coolidge v. Learned*, 8 Pick. 505. This time was fixed in analogy to the limitation of the writ of right; and it was afterward held in *Melvin v. Whiting*, 10 Pick. 295, that when the limitation of the writ of right was reduced to forty years, the time of legal memory

should have a corresponding reduction; so that here rights might be acquired by prescription in forty years. This doctrine, indeed, has only been directly applied to the acquirement of such things as may be held by prescription, and not to the right to hold land discharged of an easement; but there seems to be no reason in principle why it should not apply to one as well as to the other. In *Arundel* v. *M'Culloch*, 10 Mass. 70, which was the case of building a bridge across a navigable stream, and maintaining it for fifty years, the court say that " public rights cannot be destroyed by long continued encroachments; at least, the party who claims the exercise of any right inconsistent with the free enjoyment of a public easement or privilege must put himself upon the ground of prescription, unless he has a grant or some valid authority from the government; and a right by prescription does not exist in this case."

Looking at the general policy of our legislation, as well as at the particular terms of the statute in question, we are satisfied that the instructions of the court in the case at bar were right; and that the language of the statute, though negative in form, was intended to be affirmative in substance; and to recognize as an existing rule of law, that fences, maintained under a claim of right for forty years within the limits of the highway, give to the owner an absolute right to continue them there as against the public. It is noticeable that the substitution of forty years for sixty, and of twenty years for forty, made in the Revised Statutes, followed a corresponding change in the limitations of real actions. By Rev. Sts. *c.* 119, § 12, and *c.* 120, § 20, the same limitations are imposed upon real and personal actions brought by the Commonwealth, as those which apply to actions by private persons. And we can see no good reason why the presumption of a lawful origin, derived from the continuance for forty years of an apparent encroachment upon a public way, should not be regarded as a presumption of law, and conclusive in favor of the possession.

The third and fourth prayers for instructions which were refused, are disposed of by the considerations which have been stated in regard to the first and fifth. Establishing the petitioner's

building as the monument on the easterly side of the road, although the record recited that it left the road forty feet wide, would not change or prove the position of the boundary on the westerly side, if the whole alteration prayed for and made was the cutting off of a part of the width of the road east of the front line of the building.          *Exceptions overruled.*

*J. C. Dodge*, for the defendants, cited *St.* 1786, *c.* 67, § 7 ; Rev. Sts. *c.* 24, § 61 ; Gen. Sts. *c.* 46, § 1 ; 1 Greenl. Ev. §§ 33, 45 ; *Mayor of Kingston* v. *Horner*, Cowp. 102 ; *Rex* v. *Brown*, cited in Cowp. 110 ; *Mather* v. *Trinity Church*, 3 S. & R. 509 . *McNeil* v. *Bright*, 4 Mass. 301.

*C. W. Storey*, for the plaintiff.

