## Case No. 9,298.

### MATTOCKS v. FARRINGTON.

[2 Hask. 331.] [1]

District Court, D. Maine. Feb. 1879.

BANKRUPTCY—ATTACHMENT IN STATE COURT—OB-
JECTION BY ASSIGNEE — RETURN—APPRAISERS—
JUDGMENT—LEVY— PRIORITY — DETERMINATION
BY ASSIGNEE.

1. A creditor, having attached the property
of his debtor four months prior to the latter's
bankruptcy proceedings, if the assignee in bank-
ruptcy does not intervene and object, may prose-
cute his suit in a state court to judgment and
execution, regardless of the bankrupt proceed-
ings, and may levy the execution upon the prop-
erty attached.

2. The return of an officer, stating that the
appraisers who acted in making a levy upon real
estate are disinterested persons, is conclusive
evidence of that fact.

3. Under the statutes of Maine the return of
an officer, stating that the land levied upon by
virtue of an execution cannot be divided by
metes and bounds without damage to the whole,
wherefore he levied the same upon a fractional
part of the premises, is conclusive upon the par-
ties to the judgment and their privies.

4. A levy is held to take effect from the date
of an attachment when it appeared from the
whole record that the land levied upon was the
same that had been attached, even though the
officer's return upon the execution did not dis-
close the fact.

5. It is not the duty of an assignee in bank-
ruptcy, when a parcel of the bankrupt's estate is
wholly absorbed by the first lien thereon, to de-
termine the validity of subsequent liens, nor
their priority.

Bill by [Charles P. Mattocks] the assignee
in bankruptcy of Moses A. Pennett against
[Ira P. Farrington and others] various cred-
itors of the bankrupt to determine the valid-
ity of their respective pretended liens upon
the property of the bankrupt under levies
of an execution against him made thereon,
after he was adjudged bankrupt, without
leave from the bankrupt court.

The respondents answered that their re-
spective levies were made upon executions
from the state court in accordance with the
provisions of the statutes of Maine to en-
force attachments existing more than four
months prior to their debtor's bankruptcy
proceedings, and that the same are valid.

Thomas H. Haskell, and Nathan Webb, for
orator.

Herbert M. Sylvester and Moses M. Butler,
for respondents.

FOX, District Judge. Pennett was ad-
judged bankrupt February 5, 1878, on his
voluntary petition filed January 29, 1878, and
the complainant was appointed assignee
March 1, 1878. He has brought this bill to
determine the validity and amount of cer-
tain liens and incumbrances on an estate
in this city which formerly belonged to the
bankrupt, all persons interested having been
made respondents.

1 [Reported by Thomas Hawes Haskell, Esq.,
and here reprinted by permission.]

The claims of Farrington, being of the
greatest amount and involving the full value
of the estate, and it being claimed that they
are entitled to a priority, will first be ex-
amined. In December, 1876, Pennett mort-
gaged this estate to one Valpy to secure the
payment of $700. This mortgage was assign-
ed to Farrington January 23, 1878. No ques-
tion is made by any party as to the validity
of this mortgage, or as to its priority over
any other incumbrance, and Farrington,
therefore, is entitled to hold the same, and to
receive the full amount thereof from the es-
tate.

Various parties, having under the laws of
Maine claims for laborers and materials fur-
nished by them to Pennett to be used and
employed in the erection by him of the house
on this estate, and for which they had a lien
by Revised Statutes of Maine more than
four months before the filing of this peti-
tion by Pennett, duly commenced their ac-
tions for the enforcement of their respective
liens, and therein attached this property;
these actions were duly entered at the Sep-
tember term of the supreme court for this
county, and were all defaulted and contin-
ued from term to term for judgment. In
January, 1878, all these claims and the suits
then pending were assigned to Farrington,
and a special judgment was rendered in each
of said suits on the fourteenth day of March,
1878, by the direction of Farrington and for
his benefit, and the same were afterwards
satisfied by a levy on the estate within thirty
days after the rendition of the judgments.
These judgments were so taken without any
application to the district court for authority
so to do; nor was any notice given to the as-
signees of the pending of said actions, or that
the plaintiffs intended to take their judg-
ments and issue executions thereon; and for
these reasons, it is urged that the judgments
were invalid and the liens were lost.

Whether a party, having an attachment in
the state court upon a bankrupt's estate
saved from the operation of the bankrupt
act, could without the sanction of the bank-
rupt court, proceed in his suit, obtain judg-
ments, and satisfy the same from the bank-
rupt's estate so attached, was for a long
time a matter of serious doubt, the practice
now being uniform in the various districts.
In Maine, application was usually made to
the district court for leave to prosecute the
suit in the state court to final judgment,
which was granted upon condition that the
judgment should be satisfied upon the prop-
erty incumbered by the attachment.

In Doe v. Childress, 21 Wall. [88 U. S.] 642,
the supreme court of the United States de-
cided that when an attachment in a suit re-
turnable to the state court was made more
than four months before commencement of
bankruptcy proceedings, if the assignee did
not intervene, the state court might proceed
and render judgment and issue execution,
and the sale of the property so attached

would vest a good title in the purchaser. In the opinion, the court on page 646, says: "Where the power of a state court to proceed in a suit is subject to be impeached, it cannot be done except upon an intervention of the assignee, who shall state the facts and make the proof necessary to terminate such jurisdiction. This rule gains whether the four months' principle is applicable, or whether it is not applicable."

In Eyster v. Gaff, 91 U. S. 525, Judge Miller says: "The opinion seems to have been quite prevalent in many quarters at one time, that, the moment a man is declared bankrupt, the district court, which has so adjudged, draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee's contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the service of a rule to show cause, and to dispose of these rights in a summary way. This court has steadily set its face against this view." It was there decided that a state court cannot take judicial notice of the proceedings in bankruptcy in another court, and that it is its duty to proceed as between the parties before it until, by some proper pleading in the case, it is informed of the changed relations of any of the parties to the subject matter of the suit.

By section 5106, Rev. St., it is provided that "no creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceedings shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge, provided there is no unreasonable delay." To obtain the benefit of this provision, it is necessary that the state court should be legally notified of the pending of the proceedings in bankruptcy; if not so notified, it may proceed with the cause. The statute would seem to contemplate that the bankrupt should apply for the stay of the proceedings, and in Louisiana it was held that he alone could move in this behalf (Jones v. Clifton [Case No. 7,457]); while in Massachusetts it was held that the state court, in such a case, might proceed to judgment, "if neither the bankrupt nor the assignee moves for a stay of proceedings" (Ray v. Wight, 119 Mass. 426).

Language may be found in the opinion in Norton v. Switzer, 92 U. S. 364, 365, that may seem to imply that a cause thus pending in a state court could not be prosecuted to judgment excepting to determine the amount; but it could not have been intended that a state court was unauthorized to render judgment in a suit in which there was a valid attachment made more than four months prior to the commencement of proceedings in bankruptcy, and in which the bankruptcy of the defendant was not brought to the notice of the court, as the contrary had been repeatedly decided by the supreme court.

Under the later decisions of the supreme court, the judgments in these suits in the supreme court were not affected by the proceedings in bankruptcy, nor by the plaintiffs not having obtained the consent and authority of the district court to prosecute the same to judgment and execution, and levy on the estate attached.

Various objections are taken to the levies, three of which are alone worthy of much consideration.

I. It is said that it does not appear that the appraisers were disinterested men as required by the statute. Upon the execution, the officer states in his returns that the appraisers were disinterested, and, in all of his returns, he refers to and adopts as a part of his return, the returns of the appraisers; and in every instance in their return, they state they were disinterested; by this practice, the appraisers' return becomes incorporated with and a part of the officer's return, as sanctioned by Rev. St. c. 76, § 5; and he has thus certified to their being disinterested. The return of this fact by an officer on an execution has always been held conclusive on the parties and privies; and the fact, that one of the appraisers was a brother-in-law of Farrington, the assignee of the execution, cannot be received to contradict the officer's return; and if admissible, it would seem not to be entitled to any effect in destroying the levy, as this appraiser was selected by the debtor, who should be estopped from disturbing the levy on this account, after having seen fit to choose a relative of the creditor in interest to act in his behalf.

II. A further objection to these levies is, that they were made on undivided fractional portions of the premises, and the officer, as he states in his return, determined that the premises could not be divided by metes and bounds without damage to the whole. It is said it was the duty of the appraisers to determine this fact, and not the duty of the officer, and, therefore, the requirements of the statute have not been complied with. It may be that in Massachusetts, under the language of their act, appraisers are the proper persons to decide this question. Such would seem to be the result of the authorities cited in Pickering v. Reynolds, 111 Mass. 83; Sanborn v. Chamberlin, 101 Mass. 408; but the statute in this state is somewhat different, and in Mansfield v. Jack, 24 Me. 98, it was decided that "the return of an officer, that the land upon which an execution is to be

levied cannot be divided without prejudice to or spoiling the whole, is conclusive of the fact as between the creditor and debtor and those claiming under them."

III. It is further objected that it does not appear from the execution to what estate the lien attached, or that the property levied upon was the same to which the lien did attach, or that it was taken for the purpose of enforcing a lien. When the whole record is examined, it discloses all the facts that are requisite to establish the validity of the lien, and that the estate levied upon was that to which the lien attached; and there is no provision of law, which requires that all such facts should again be set forth in the officer's return; they having become a part of the record, it is all that is requisite.

As the entire estate is exhausted by the prior claims of Farrington, it is unnecessary to determine as to the rank and position of the subsequent claims of other respondents; and as the unsecured creditors can in no event realize any advantage therefrom, it is not the duty of the assignee to call upon the court to pass upon the rights of these various parties; but they should be required, at their own expense, to litigate these matters between themselves, if they are advised so to do. Decree accordingly.